**HALL–WOOLFORD TANK CO., INC., Appellant,**

**v.**

**R.F. KILNS, INC., Appellee.**

Superior Court of Pennsylvania.

Argued June 25, 1997.

Filed July 21, 1997.

Esther L. Hornik, Philadelphia, for appellant.

Stephen J. Imbriglia, Philadelphia, for appellee.

Before McEWEN, President Judge, and POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

In November of 1995, Jack Hillman, general manager of Hall–Woolford Tank Co., Inc., of Philadelphia, Pennsylvania, contacted Theodore Hartman, the president of R.F. Kilns, Inc., of Salamanca, New York, to inquire about the feasibility and cost of certain lumber-drying services. More particularly, Hillman told Hartman that he was contemplating buying a quantity of red cypress wood from Florida for use in Hall–Woolford's construction of wooden tanks and fermenters. Because the red cypress had a high moisture content, however, it needed to be professionally dryed prior to use. Hartman indicated that Kiln's high-speed microwave dryer could sufficiently dry the red cypress, and the two agreed upon a price for the service. The lumber was then shipped from Florida to New York, where it was treated at Kiln's facility.

After the drying process was completed and the cypress was shipped to Philadelphia, however, Hall–Woolford contacted Kilns to report that the lumber was damaged during the drying process and was unsuitable for use. Kilns maintained that it dryed the lumber in an acceptable, workmanlike, fashion and requested payment. Hall–Woolford, in turn, instituted the instant action in the Court of Common Pleas of Philadelphia County alleging that, by its negligent workmanship, Kilns breached its contract and rendered the lumber unsuitable for any commercial purpose.

In response to the complaint, Kilns filed preliminary objections wherein it claimed that its connections with Pennsylvania did not evidence the necessary minimum contacts to support the exercise of either specific or general personal jurisdiction and that it was, therefore, not subject to suit in this forum. Affixed to Kilns's preliminary objections was an affidavit signed by Theodore F. Hartman, president to R.F. Kilns, Inc. Therein, Hartman swore, *inter alia*, that

Kilns was a New York corporation with its sole place of business in Salamanca, New York, and that Kilns did not advertise or otherwise solicit or transact business out of the state. With respect to the particulars of the disputed contract, Hartman averred that the execution of the parties' contract occurred in New York and that Hall–Woolford, rather than Kilns, arranged for transport of the lumber both to and from New York.

In response, Hall–Woolford filed an answer in which it asserted that Kilns's forum-related activities were sufficient to support the exercise of specific *in personam* jurisdiction. As to the particulars of the parties' shipment arrangements, Hall–Woolford admitted that it arranged for the lumber to be transported from Florida to Kilns's New York facility. Thereafter, Hall–Woolford stated that "after the lumber arrived in Philadelphia," it was inspected and judged unsuitable. The answer did not, however, identify whether Hall–Woolford or Kilns shipped the cypress to Philadelphia. In addition to the answer, Hall–Woolford submitted the counter-affidavit of Jack Hillman, the general manager of Hall–Woolford, Co., Inc., as well as the bill of lading for the lumber's New York–to–Philadelphia shipment. In the affidavit, Hillman asserted that, after the lumber was treated in New York, Kilns loaded the lumber onto a truck which traveled from New York to Philadelphia. As with the appended brief, the affidavit failed to specify which party arranged for the New York–to–Philadelphia shipment. The bill of lading identified a third party, Krome, Inc., as the carrier.

Following further briefing, the Honorable Alfred J. DiBona, Jr. granted Kilns's preliminary objections and dismissed Hall–Woolford's complaint. This timely appeal follows.

■ At the outset, we note that "when preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in the clearest of cases." *King v. Detroit Tool Co.,* 452 Pa.Super. 334, 337, 682 A.2d 313, 314 (1996) (citation omitted). Moreover, because the burden rests upon the party challenging the court's exercise of jurisdiction, the court must consider the evidence in the light most favorable to the non-moving party. *Id.* See also *Filipovich v. J.T. Imports, Inc.,* 431 Pa.Super. 552, 555–57, 637 A.2d 314, 316 (1994). Once the movant has supported its jurisdictional objection, however, the burden shifts to the party asserting jurisdiction to prove that there is statutory and constitutional support for the court's exercise of *in personam* jurisdiction. See, e.g., *McCall v. Formu–3 International, Inc.,* 437 Pa.Super. 575, 577–79, 650 A.2d 903, 904 (1994); *Derman v. Wilair Services, Inc.,* 404 Pa.Super. 136, 139–41, 590 A.2d 317, 319 (1991).

■ Pursuant to the Judiciary Act, 42 Pa. C.S.A. § 5301 *et seq.,* our courts may exercise two types of *in personam* jurisdiction over a non-resident defendant. General jurisdiction is founded upon a defendant's general activities within the forum which evidence continuous and systematic contacts with the state. See *Derman,* 404 Pa.Super. at 139–43, 590 A.2d at 319–20. Specific jurisdiction has a more narrow scope and is focused upon the particular acts of the defendant which gave rise to the underlying cause of action. *Id.*

■ Regardless of whether general or specific personal jurisdiction is asserted, the propriety of such an exercise must be tested against both the Pennsylvania longarm statute, 42 Pa.C.S.A. § 5322, and the due process clause of the fourteenth amendment. In order to meet constitutional muster, a defendant's contacts with the forum state must be such that the defendant could reasonably anticipate being called to defend itself in the forum. See, e.g., *Kubik v. Letteri,* 532 Pa. 10, 19–20, 614 A.2d 1110, 1115 (1992) (expressly adopting the minimum contacts test advocated by the United States Supreme Court in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Random, fortuitous and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of personal jurisdiction. *Id.* That is, the defendant must have purposefully directed its activities to the forum and conducted itself in a manner indicating that it has availed itself of the forum's privileges and benefits such

that it should also be subject to the forum state's laws and regulations. *Id.*

Instantly, Hall–Woolford contends that the trial court erred in concluding that Kilns's conduct surrounding the formation and execution of the parties' contract did not support the exercise of specific personal jurisdiction. In support of this assertion, Hall–Woolford identifies the following forum-related conduct: (1) the parties' contract contemplated the performance of a unique service; (2) Kilns's payment invoice indicated that the lumber was shipped from New York to Pennsylvania; (3) based upon a credit report prepared by a Pennsylvania bank, Kilns agreed to perform the drying procedure prior to payment; (4) Kilns was not to receive payment until the lumber was delivered to Hall–Woolford in Pennsylvania; and (5) there were a number of inter-state mail and telephone communications between the parties.

Section 5322 of our Judiciary Act, 42 Pa. C.S.A. § 5301 *et seq.*, codifies the bases for the exercise of specific personal jurisdiction. Although the Act provides ten definitive bases to support specific jurisdiction over the person, Hall–Woolford's argument is limited to the following four subsections of the statute:

> § 5322 **Bases of personal jurisdiction over persons outside this Commonwealth**
>
> **(a) General Rule.**—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:
>
> (1) Transacting business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:
>
> \*    \*    \*    \*    \*    \*
>
> (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or other-

> wise accomplishing an object with the intention of initiating a series of such acts.
>
> (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.
>
> \*    \*    \*    \*    \*    \*
>
> (2) Contracting to supply services or things in this Commonwealth.
>
> \*    \*    \*    \*    \*    \*
>
> (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

42 Pa.C.S.A. § 5322.

After careful review, we find that Kilns's forum-related actions were insufficient to support the exercise of personal jurisdiction by the courts of our Commonwealth and that the trial court, therefore, properly sustained Kilns's preliminary objections.

■ It is well settled that "an individual's contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts in the other party's home forum." *Kubik v. Letteri,* 532 Pa. at 18, 614 A.2d at 1114 (emphasis in original) (citing *Burger King Corporation v. Rudzewicz,* 471 U.S. 462 at 478–80, 105 S.Ct. 2174 at 2185–86, 85 L.Ed.2d 528 at 545); *see also C.J. Betters Corp. v. Mid South Aviation Services, Inc.,* 407 Pa.Super. 511, 515–16, 595 A.2d 1264, 1266 (1991). Rather, the totality of the parties' dealings, including the contract negotiations, contemplated future consequences of the contract, and actual course of dealing must be evaluated in order to determine whether the foreign defendant is subject to suit in the plaintiff's chosen forum. *Id.*

■ Taken together, we agree with the trial court that Kilns's contacts with Pennsylvania cannot support the exercise of specific personal jurisdiction. The undisputed facts prove that Hall–Woolford contacted Kilns in order to inquire about the feasibility of drying the red cypress. Hall–Woolford arranged for the lumber to be harvested in Florida and shipped to New York. Kilns then performed the drying service in New York. At no time did a Kilns agent or representative enter Pennsylvania to per-

form contract negotiations or services. The parties also agree that Kilns made several telephone calls to Hall–Woolford following Hall–Woolford's initial contact. For example, after receiving the lumber and test-drying a small sample, Kilns telephoned Hall–Woolford to report that the sample was successfully dried and that Kilns would proceed to treat the remainder of the cypress.

We find, however, that these contacts, rather than being substantial are better described as attenuated and random. The fact that the parties' contract necessitated several follow-up phone calls, some of which were made by Kilns, does not lead to the conclusion that Kilns thereby availed itself of the privileges of our state such that it should also have anticipated being subjected to its burdens by being haled into a Pennsylvania court.

In addition to the undisputed facts detailed above, Hall–Woolford asserts that, because Kilns shipped the cypress from New York to Philadelphia after the lumber was treated, Kilns is subject to suit in our forum. It is true that there is statutory support for this proposition. *See* 42 Pa.C.S.A. § 5322(a)(1)(iii), *supra.* We find, however, that, rather than being supported by factual evidence, this averment is vacuous and cannot, therefore, support the imposition of our courts' jurisdictional reach.

As stated, once the party opposing jurisdiction has supported his objection with competent evidence, the burden shifts to the party asserting jurisdiction to prove that, both statutorily and constitutionally, personal jurisdiction is proper. Presently, in support of its preliminary objections opposing jurisdiction, Kilns submitted an affidavit wherein it claimed that Hall–Woolford made all of the shipping arrangements for the lumber.

In its answer to Kilns's objections, Hall–Woolford did not affirmatively aver, let alone offer proof, of which company arranged for the cypress to be shipped from New York to Philadelphia. Instead, Hall–Woolford merely stated that Kilns's employees loaded the cypress onto a truck which then traveled to Philadelphia. One must then make a giant leap from reality into conjecture to surmise that, because Kilns loaded the goods, it was responsible for the shipment arrangements and payments. This is especially true in light of the fact that the bill of lading submitted by Hall–Woolford identifies a third party, Krome, Inc., as the carrier.

In sum, when presented with the opportunity to rebut the averment that it shipped the goods both to and from Kilns's facility, Hall–Woolford proffered evidence which was, at best, inconclusive. Vague evidentiary support such as this is insufficient to sustain a proponent's burden of proving that jurisdiction is proper.

We find that the record amply supports the conclusion that Kilns's conduct in relation to the disputed matter was too attenuated to support the exercise of *in personam* jurisdiction. By merely entering into a contract with a Pennsylvania corporation, making several follow-up telephone calls and sending a payment invoice, it cannot be said that Kilns purposefully availed itself of our state's benefits and protections such that it could reasonably anticipate being called to defend itself in our courts. If contacts such as these were the benchmark for jurisdiction, our courts could require foreign defendants to defend themselves in Pennsylvania based upon minimal, rather than minimum, contacts.[1]

Order affirmed.

---

1. Hall–Woolford relies upon our Supreme Court's holding in *Kubik, supra,* to support its argument that a defendant's act or omission outside of this Commonwealth which causes economic harm within this state provides a proper basis for personal jurisdiction. We find such reliance misplaced. In *Kubik,* our Supreme Court stated, in a footnote, that our legislature must have intended subsection (a)(3) of 42 Pa. C.S.A. § 5322 to encompass economic, as well as physical, harm. The facts of *Kubik* are, however, vastly different from those presently before our Court. *Kubik* involved the sale of real property located in Pennsylvania. At the time of the sale, all of the interested parties were Pennsylvania residents. Thus, the unbreakable and undeniable

---

ties with Pennsylvania led to the conclusion that the diminution of the real property value amounted to actionable economic harm which supported the exercise of personal jurisdiction. We therefore decline to base our present holding upon the *dicta* found in a factually distinguishable footnote.

