GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,

v.

Eugene KELLER, Appellee.

Superior Court of Pennsylvania.

Argued May 11, 1999.
Filed Aug. 23, 1999.

Dennis E. Boyle, Harrisburg, for appellant.

Richard E. Thrasher, Gettysburg, for appellee.

Before POPOVICH, ORIE MELVIN and BROSKY, JJ.

POPOVICH, J.:

¶ 1 Appellant General Motors Acceptance Corporation ("GMAC") appeals from the order of the Adams County Court of Common Pleas, which dismissed its complaint for want of personal jurisdiction. GMAC's sole argument on appeal is that the trial court erred in its determination that it lacked personal jurisdiction over appellee. Upon review, we conclude that appellee falls within the reach of Pennsylvania's long-arm statute and that the exercise of specific jurisdiction in these circumstances is constitutional. Accordingly, we reverse and remand for trial.

¶ 2 The record reveals that GMAC is a New York Corporation that maintains an office in Harrisburg, Pennsylvania. Appellee is a resident of New Port Richey, Florida. From 1989 though 1993, appellee purchased three automobiles from Krystal Cadillac, a dealership located at 1510 York Road in Gettysburg, Pennsylvania. Each time, appellee secured financing for these vehicles from GMAC's Pennsylvania office.

¶ 3 Appellee's most recent vehicle purchase took place on February 11, 1993. Harry Pappas, appellee's personal friend and the president of Krystal Cadillac, negotiated the sale with appellee. According to the affidavits of Harry Pappas and appellee, all negotiations and transactions concerning the sale took place in Florida, and the dealership delivered the vehicle to appellee in New Port Richey, Florida. The retail installment sales contract, how-ever, stated that the contract was "[f]or use in the State of Pennsylvania," and that Krystal Cadillac, located in Gettysburg, Pennsylvania, would provide the financing for the purchase.

¶ 4 Six days before he purchased this automobile, Appellee completed an application to obtain financing for the $47,900.00 purchase price. The credit application stated that the application would be submitted to GMAC's Harrisburg office and included the following provision:

FAIR CREDIT REPORTING ACT DISCLOSURE. This application for credit sale will be submitted to GMAC, 2407 Park Drive, Harrisburg, Pennsylvania 17110.

After GMAC's Harrisburg office reviewed and approved appellee's credit application, it purchased the retail installment sales contract.

¶ 5 From March through July of 1993, appellee submitted monthly payments on the contract to GMAC's Harrisburg office. Appellee ceased making payments on the contract in August. After repeated attempts to obtain payment *via* letters and telephone calls, GMAC instituted suit against appellee in the Court of Common Pleas of Adams County to collect the balance due under the contract, $ 46,720.96, and attorneys' fees.

¶ 6 In response, appellee filed a preliminary objection, which challenged the *in personam* jurisdiction of the trial court.[1] The lower court heard arguments on the matter and ultimately dismissed the case against appellee for want of jurisdiction. GMAC then filed this timely appeal.

"[W]hen preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sus-

---

1. GMAC then filed a response with new matter, to which appellee did not respond. On July 15, 1997, GMAC filed a praecipe to list appellee's preliminary objection for argument. Instead of responding to the new matter, appellee filed a motion for rule to show cause why a judgment of *non pros* should not be entered. Both parties filed briefs on the issue, and on February 10, 1998, the trial court entered a judgment of *non pros* in favor of appellee. GMAC later filed a motion to vacate the judgment of *non pros*, which the court granted pursuant to *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098 (1998). On August 28, 1998, GMAC again requested that the court list appellee's preliminary objections for argument, which the court did.

tained only in the clearest of cases." *King v. Detroit Tool Co.*, 452 Pa.Super. 334, 337, 682 A.2d 313, 314 (1996) (citation omitted). Moreover, because the burden rests upon the party challenging the court's exercise of jurisdiction, the court must consider the evidence in the light most favorable to the non-moving party. *Id. See also Filipovich v. J.T. Imports, Inc.*, 431 Pa.Super. 552, 555–57, 637 A.2d 314, 316 (1994). Once the movant has supported its jurisdictional objection, however, the burden shifts to the party asserting jurisdiction to prove that there is statutory and constitutional support for the court's exercise of *in personam* jurisdiction. *See, e.g., McCall v. Formu–3 International, Inc.*, 437 Pa.Super. 575, 577–79, 650 A.2d 903, 904 (1994); *Derman v. Wilair Services, Inc.*, 404 Pa.Super. 136, 139–41, 590 A.2d 317, 319 (1991).

Pursuant to the Judiciary Act, 42 Pa. C.S.A. § 5301 *et seq.*, our courts may exercise two types of *in personam* jurisdiction over a non-resident defendant. General jurisdiction is founded upon a defendant's general activities within the forum which evidence continuous and systematic contacts with the state. *See Derman*, 404 Pa.Super. at 139–43, 590 A.2d at 319–20. Specific jurisdiction has a more narrow scope and is focused upon the particular acts of the defendant which gave rise to the underlying cause of action. *Id.*

Regardless of whether general or specific personal jurisdiction is asserted, the propriety of such an exercise must be tested against both the Pennsylvania long arm statute, 42 Pa.C.S.A. § 5322, and the due process clause of the [F]ourteenth [A]mendment. In order to meet constitutional muster, a defendant's contacts with the forum state must be such that the defendant could reasonably anticipate being called to defend itself in the forum. *See, e.g., Kubik v. Letteri*, 532 Pa. 10, 19–20, 614 A.2d 1110, 1115 (1992) (expressly adopting the minimum contacts test advocated by the United States Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Random, fortuitous and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of personal jurisdiction. *Id.* That is, the defendant must have purposefully directed its activities to the forum and conducted itself in a manner indicating that it has availed itself of the forum's privileges and benefits such that it should also be subject to the forum state's laws and regulations. *Id.*

*Hall–Woolford Tank Co. v. R.F. Kilns*, 698 A.2d 80, 82–83 (Pa.Super.1997). Pennsylvania's long-arm statute permits our courts to "exercise jurisdiction over non-resident defendants 'to the fullest extent allowed under the Constitution of the United States' and jurisdiction may be based 'on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.' " *C.J. Betters v. Mid South Aviation*, 407 Pa.Super. 511, 595 A.2d 1264, 1266 (1991) (citations omitted).

¶ 7 On appeal, GMAC argues that appellee's contacts with Pennsylvania supported the exercise of specific jurisdiction over him in this suit, which involves an alleged breach of one of the installment contracts. We agree and find appellee's forum-related activities sufficient to support the exercise of personal jurisdiction by the courts of our Commonwealth.

It is well settled that "an individual's contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts in the other party's home forum." *Kubik* [ ], 532 Pa. at 18, 614 A.2d at 1114 (emphasis in original) (citing *Burger King Corp* [.], 471 U.S. 462 at 478–80, 105 S.Ct. at 2185–86, 85 L.Ed.2d at 545); *see also C.J. Betters Corp.* [ ], 407 Pa.Super. [at] 515–516, 595 A.2d [at] 1266[ ]. Rather, the totality of

the parties' dealings, including the contract negotiations, contemplated future consequences of the contract, and actual course of dealing must be evaluated in order to determine whether the foreign defendant is subject to suit in the plaintiff's chosen forum. *Id.*

*Hall–Woolford*, 698 A.2d at 83.

¶ 8 Here, appellee purposefully availed himself of the privileges and benefits of conducting business in the Commonwealth. He was well aware, or should have been, that he was dealing with a Pennsylvania automobile dealership and financing company. The credit application appellee completed informed him that his application would be examined by GMAC's Harrisburg Office, and after the automobile sale, appellee sent payments on the retail sales installment contract to GMAC's Harrisburg address. Furthermore, appellee completed two nearly-identical automobile purchase and finance arrangements with the same dealership within five years of his third vehicle purchase.

¶ 9 Appellee relies heavily upon the fact that he had no physical contact with or presence in the Commonwealth. He stresses that he did not solicit, nor negotiate any of the terms of the contract while in Pennsylvania and that the dealership delivered the automobile to Florida. While it may be true that appellee had no physical connection with the forum, that is not dispositive. "When a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Mellon Bank v. Farino*, 960 F.2d 1217, 1225 (3d Cir.1992) (quoting *Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543).

¶ 10 Standing alone, appellee's agreement to make loan repayments to a Pennsylvania company might not constitute sufficient forum contacts to sustain personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 482, 105 S.Ct. at 2185, 85 L.Ed.2d at 547. We, however, cannot ignore that appellee had contacts with Pennsylvania both before and after the contract. Appellee purposefully submitted his application for credit to a Harrisburg business. He sought financing for automobile purchases from Pennsylvania companies on two prior occasions and, importantly, submitted his payments on the present contract to a Pennsylvania address.

¶ 11 For some reason, be it the rate of interest offered by GMAC, the service the company provided, the availability of funds, or merely the whim of the purchaser, appellee chose to finance his automobile purchase through GMAC. He clearly had the option to seek financing with a bank or banks in any number of other states. Yet, appellee, as he had done twice before, chose a financing company located in Pennsylvania. While it may be true that an automobile salesman while in Florida instigated appellee's initial contact with GMAC, appellee submitted his credit application and subsequent payments to GMAC in Pennsylvania. The actions of appellee, therefore, knowingly created continuing obligations with a Pennsylvania company. These circumstances—viewed along with that fact that appellee had conducted two similar transactions in the past—leads this court to conclude that appellee purposefully directed his activities toward a Pennsylvania resident and thereby availed himself of the opportunity to do business there. *See Burger King Corp.*, 471 U.S. at 479 and 482, 105 S.Ct. at 2185 and 2187, 85 L.Ed.2d at 545 and 547 (explaining that courts must employ a highly realistic approach to personal jurisdiction issues and may take into account prior negotiations, contemplated future consequences, terms of the contract and the parties' actual course of dealing; also noting choice of law provision in loan agreement executed is factor which may demonstrate that defendants could reasonably foresee that their acts would have effect in Pennsylvania).

Once it has been determined that the defendant purposefully established minimum contacts with the forum state, those contacts may be considered in light of other factors to determine whether the exercise of personal jurisdiction will comport with fair play and substantial justice. *Burger King [Corp.]*, [ ] 471 U.S. at 476–77, 105 S.Ct. at 2184, 85 L.Ed.2d at 543–44. Those factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the "several States in furthering fundamental substantive social policies." *Id.*

*C.J. Betters*, 595 A.2d at 1266 (citations omitted).

¶ 12 In the case *sub judice*, the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. GMAC's interest in obtaining relief in our courts is obvious: its office and the witnesses and records relevant to this matter are in Pennsylvania. Appellee had fair notice from the retail sales installment contract and his credit application that he might be haled into court in the forum state, and the burden placed on appellee to litigate in this jurisdiction is not inordinate. Appellee "purposefully derived benefit from [his] activities in Pennsylvania, and, as such, it would be unfair to allow [him] to escape having to account in Pennsylvania for consequences resulting from such activities." *Kubik*, 532 Pa. at 19–20, 614 A.2d at 1115. Finally, we note that allowing GMAC to litigate the case in Pennsylvania will also promote judicial economy. The case will proceed more effectively and expediently in Pennsylvania than in Florida because most of the documents and witnesses are located in Pennsylvania, and Pennsylvania law will be applicable to this case.

¶ 13 We conclude that the assertion of jurisdiction over appellee in this case would be consistent with Pennsylvania's long-arm statute, as well as constitutional limitations on state power. The trial court's dismissal of this case based on appellee's preliminary objection, therefore, must be reversed, and the matter remanded for trial.

¶ 14 Order reversed. Case remanded for trial. Jurisdiction relinquished.

**In re D.J.S.**