**FIDELITY LEASING, INC., Appellee,**

v.

**LIMESTONE COUNTY BOARD OF EDUCATION, Appellant.**

Superior Court of Pennsylvania.

Argued April 25, 2000.

Filed Aug. 22, 2000.

---

John C. McNamara, Philadelphia, for appellant.

Thomas B. Fiddler, Philadelphia, for appellee.

Before: DEL SOLE, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, J.:

¶ 1 This is an interlocutory appeal of Appellant Limestone County Board of Education ("Limestone") of the order of the Montgomery County Court of Common Pleas, which overruled Limestone's preliminary objections to the trial court's personal jurisdiction. Upon review, we conclude that the exercise of *in personam* jurisdic-

tion in these circumstances was unconstitutional. Accordingly, we reverse and remand for proceedings consistent with this opinion.

¶ 2 The record reveals the factual and procedural history as follows. Limestone is a school board for a school district located in Athens, Alabama, and Fidelity Leasing, Inc. ("Fidelity"), is a Pennsylvania corporation located in Ambler, Montgomery County, and is in the business of leasing photocopiers.[1]

¶ 3 On three separate occasions between November 1997 and May 1998, Limestone met with a representative of the J.R. Ray Company ("J.R. Ray"), of Madison, Alabama, which was an authorized Minolta copy equipment dealer. The meetings were for the purpose of negotiating a lease of photocopiers. The J.R. Ray representative met with two different high school principals employed by Limestone, Donald Wilson and Aubry Privett, and negotiated with them for the lease of photocopiers. Fidelity was to provide the financing to Limestone for the leasing of the equipment. The terms of the three lease agreements are essentially identical. Fidelity would lease the equipment to Limestone, and, in return, Limestone would make monthly payments to Fidelity in Pennsylvania. The lease provisions provided, in part, that Limestone would pay to Fidelity, in the event of default by Limestone, the remaining balance on the lease, the residual value of the equipment and any costs. Limestone also would return the equipment to Fidelity. The lease provisions also provided that by virtue of Fidelity's countersigning and accepting the terms of agreements in Ambler, the lease agreements were entered into in Pennsylvania and that Pennsylvania law would govern the terms of the agreements. Between November 1997 and May 1998, Limestone signed three lease agreements for the photocopiers. The J.R. Ray Company representative sent each of the signed lease agreement to Fidelity for countersigning and acceptance.

¶ 4 The leases dated November 20, 1997, and January 28, 1998, indicated that Limestone's address was 505 East Sanderford, Athens, Limestone County, Alabama, which is the address of the Limestone Technical School. Donald Wilson signed both leases on behalf of Limestone. The lease dated May 14, 1998, indicated Limestone's address was 10945 School House Road, Lester, Limestone County, Alabama, which is the address of West Limestone High School. Aubry Privett signed the lease on Limestone's behalf.

¶ 5 Limestone made sporadic payments to Fidelity in Pennsylvania but eventually defaulted on the loan. On January 14, 1999, Fidelity instituted a collection action in the Montgomery County Court of Common Pleas, and claimed damages for breach of contact on the three lease agreements.

¶ 6 In response, Limestone filed preliminary objections, which challenged the *in personam* jurisdiction and venue of trial court. The trial court heard arguments on the matter. During the oral argument, Fidelity advised the trial court of a recent case involving Fidelity as a party before another Montgomery County judge in which similar preliminary objections challenging venue and in personam jurisdiction was granted in favor of the non-resident party. Fidelity presented a copy of that order to the trial court and requested that the present preliminary objections be suspended until the other appeal of the other case was pursued. The trial court refused Fidelity's request and proceeded with the argument.

¶ 7 By order, the trial court overruled the preliminary objections and directed Limestone to file an answer to Fidelity's complaint. Trial Order, 10/25/99.

---

1. Fidelity's corporate office was located at 7 East Skipack Pike, Ambler, Pennsylvania, during the formation of the three lease agreements. In late 1998, Fidelity relocated its office to 1255 Wrights Lane, West Chester, Chester County, Pennsylvania.

¶ 8 Fidelity filed timely an election to have the October 25th order deemed a "final order" pursuant to Rule 311(b)(1) of the Pennsylvania Rules of Appellate Procedure.[2] Limestone filed a timely notice of appeal.

¶ 9 Limestone presents the following issues for our review:

1. Did the trial court err in determining there were sufficient contacts to exercise personal jurisdiction over Limestone?

2. Did the trial court err by failing to abide by the decision of a court of coordinate jurisdiction?

3. Did the trial court err in determining venue was proper in Montgomery County?

Appellant brief, at 4.

■ ¶ 10 Whenever conducting an appellate review of preliminary objections, we observe that rulings on preliminary objections, which the end result of would be dismissal of the action, may be properly sustained only if the case is free and clear of doubt. See Knight v. Northwest Sav. Bank, 747 A.2d 384, 386 (Pa.Super.2000) (citing Filter v. McCabe, 733 A.2d 1274, 1276 (Pa.Super.1999), appeal denied, — Pa. ——, 758 A.2d 1200, 2000 Pa. LEXIS 1100 (Pa. May 2, 2000)).

¶ 11 Limestone first contends that the trial court erred in finding that it could exercise in personam jurisdiction over a non-resident defendant.

■ ¶ 12 When reviewing a challenge to the trial court's exercise of jurisdiction, we note that the burden rests upon the party challenging the trial court's jurisdiction, so we must consider the evidence in the light most favorable to the non-moving party. See King v. Detroit Tool Co., 452 Pa.Super. 334, 682 A.2d 313, 314 (1996). Once the movant has supported its jurisdictional objection, the burden shifts to the party asserting jurisdiction to prove that there is statutory and constitutional support for the trial court's exercise of in personam jurisdiction. See GMAC v. Keller, 737 A.2d 279, 281 (Pa.Super.1999).

■ ¶ 13 Pursuant to the Judiciary Act, 42 Pa.C.S.A. §§ 5301–5329, our courts may exercise two types of in personam jurisdiction over a non-resident defendant. One type of personal jurisdiction is general jurisdiction, which is founded upon a defendant's general activities within the forum as evidenced by continuous and systematic contacts with the state. See GMAC, 737 A.2d at 281 (citing Hall–Woolford Tank Co. v. R.F. Kilns, 698 A.2d 80, 82 (Pa.Super.1997)). The other type is specific jurisdiction, which has a more defined scope and is focused upon the particular acts of the defendant that gave rise to the underlying cause of action. See id., 737 A.2d at 281 (citing Hall–Woolford Tank Co., 698 A.2d at 82).

Regardless of whether general or specific in personam jurisdiction is asserted, the propriety of such an exercise must be tested against the Pennsylvania long arm statute, 42 Pa.C.S.A. § 5322, and the due process clause of the Fourteenth Amendment. In order to meet constitutional muster, a defendant's contacts with the forum state must be such that the defendant could reasonably anticipate being called to defend itself in the forum. See, e.g., Kubik v. Letteri, 532 Pa. 10, 19–20, 614 A.2d 1110, 1115 (1992) (expressly adopting the minimum contacts test advocated by the United States Supreme Court in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Random, fortuitous and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of personal jurisdiction. Id. That is, the defendant must have pur-

---

2. Rule 311(b)(1) provides, in part, that an appeal may be taken as of right from an order in a civil action sustaining the venue of the matter or the jurisdiction over the person if within ten days after the entry of that order, the plaintiff, petitioner or other party benefiting from the order files an election that the order shall be deemed final.

posefully directed its activities to the forum and conducted itself in a manner indicating that it has availed itself to the forum's privileges and benefits such that it should also be subjected to the forum state's laws and regulations. *Id.*

*GMAC*, 737 A.2d at 281 (citing *Hall–Woolford*, 698 A.2d at 83).

¶ 14 A question of whether the courts of this Commonwealth may exercise specific jurisdiction over a non-resident defendant is determined by a two-prong test applying the Pennsylvania long-arm statute and the Due Process clause of the Fourteenth Amendment. *See King*, 682 A.2d at 314.

¶ 15 The first prong of the test is to determine whether the Pennsylvania long-arm statute permits jurisdiction. A tribunal of this Commonwealth may exercise personal jurisdiction over a person who transacts any business in this Commonwealth. *See* 42 Pa.C.S.A. § 5322(a)(1). The Pennsylvania long-arm statute permits jurisdiction to be exercised "to the fullest extent allowed under the Constitution of the United States and may be based upon the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b).[3] Limestone entered into a business transaction in the Commonwealth by virtue of lease agreement with Fidelity that stated the lease was entered into in the Commonwealth of Pennsylvania. Additionally, Limestone does not contest the applicability of the Pennsylvania long-arm statute, so we will examine the second prong and whether the trial court's exercise of specific personal jurisdiction over Limestone passes constitutional muster.

¶ 16 The constitutional limitations on an assertion of specific personal jurisdiction over an out-of-state defendant are clear: (1) the non-resident defendant must have sufficient minimum contacts with the forum state and (2) the assertion of *in*

*personam* jurisdiction must comport with fair play and substantial justice. *See King*, 682 A.2d at 315 (citing *Burger King*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

¶ 17 It is well-settled that an individual's contract with a non-resident party *alone* cannot automatically establish sufficient minimum contacts in the other party's home state. *See Kubik*, 614 A.2d at 1114. Rather, the totality of the circumstances, including the parties' prior negotiations, their contemplated future consequences, their actual course of dealing and the terms of the contract must be evaluated in order to determine whether the non-resident defendant is subject to the Commonwealth's forum. *See GMAC*, 737 A.2d at 282 (citing *Hall–Woolford*, 698 A.2d at 83). It is necessary that the defendant's contacts are purposeful and voluntary and give rise to the cause of action.

¶ 18 In light of the above, we turn our attention to Fidelity's complaint and the evidence presented to us by the parties. Limestone presented evidence that it has virtually no ties with Pennsylvania. Limestone demonstrated that it was not incorporated in Pennsylvania, was not authorized, licensed or registered to conduct business in Pennsylvania nor had any employees in Pennsylvania. Limestone is a school board for a school district located in Athens, Alabama. Limestone never contacted Fidelity directly. Limestone contacted J.R. Ray in Alabama for the leasing of photocopiers. All of the negotiations involving Limestone and J.R. Ray occurred in Alabama. Then J.R. Ray contacted Fidelity in order for Limestone to obtain financing. J.R. Ray was a vendor of Minolta copiers, and Fidelity provided financing for the copiers. Limestone was required to use the copiers in Alabama. Essentially, all of Limestone's acts occurred outside of Pennsylvania.

---

**3.** Pennsylvania courts have recognized that this provision renders the reach of the long-arm statute coextensive with that permitted by the Due Process Clause of the Fourteenth Amendment. *See Koenig v. International Brotherhood of Boilermakers, etc.*, 284 Pa.Super. 558, 426 A.2d 635 (1980).

¶ 19 Fidelity presented evidence that the lease agreements were counter-signed in Pennsylvania, and were entered into in Pennsylvania by virtue of a provision in the agreements. The agreements also provided that Pennsylvania law governs any discrepancy that should arise from the agreement. Limestone was to make all payments to Fidelity in Pennsylvania. Additionally, after the agreements were entered into, Limestone and Fidelity had over twenty communications regarding the lease agreements. Fidelity asserts that Limestone knew Fidelity was a Pennsylvania corporation because Fidelity's address in Ambler, Pennsylvania, was written at the top of the lease. Fidelity contends that these lease agreements show that Limestone purposely directed its activities towards Pennsylvania.

¶ 20 This is admittedly a close case. Nevertheless, we find that Limestone's connections with Pennsylvania lacked the substantiality necessary to justify the existence of *in personam* jurisdiction over Limestone. Limestone had not purposely availed itself of the privilege of conducting activities in Pennsylvania and, by virtue of its conduct and connection with the forum state, should not have reasonably anticipated being subject to suit in Pennsylvania. Limestone contacted J.R. Ray, an Alabama copier vendor, in order to obtain copiers for use in Alabama. Limestone required financing for the copiers. Limestone signed the lease agreements in Alabama, and J.R. Ray sent the agreements to Fidelity in Pennsylvania for countersigning and acceptance. Limestone agreed to make lease payments to Fidelity and contacted Fidelity on numerous occasions about those payments. We find that Limestone's agreement to make payments to a Pennsylvania company did not constitute sufficient minimum forum contacts to sustain personal jurisdiction.

¶ 21 To support our finding that Limestone did not have sufficient minimum forum contacts to sustain *in personam* jurisdiction, we cite to a factual similar case, *Hall–Woolford*. In *Hall–Woolford*, we held that a New York lumber drying company's contacts with Pennsylvania did not support an exercise of specific personal jurisdiction in an action commenced by a Pennsylvania entity. *Hall–Woolford*, 698 A.2d at 84. In the case, a Pennsylvania manufacturer contacted the New York corporation to inquire about the feasibility of drying lumber. *Id.* at 81. The Pennsylvania manufacturer arranged for lumber to be harvested from Florida and shipped to New York. *Id.* at 82. The New York corporation failed to treat the lumber to the satisfaction of the Pennsylvania manufacturer. *Id.* at 81. An agent of the New York corporation made several follow-up phone calls, but at no time did the corporation or its agents enter the Commonwealth of Pennsylvania. *Id.* at 83–84.

¶ 22 We concluded:

By merely entering into a contract with a Pennsylvania corporation, making several follow-up telephone calls and sending a payment invoice, it cannot be said that [the New York corporation] purposefully availed itself of our state's benefits and protections such that it could reasonably anticipate being called to defend itself in our courts. If contacts such as these were the benchmark for jurisdiction, our courts could require foreign defendants to defend themselves in Pennsylvania based upon minimal contacts, rather than minimum, contacts.

*Id.* at 84.

¶ 23 In the present case, Limestone and J.R. Ray, both located in Alabama, negotiated three leases of photocopiers. J.R. Ray contacted Fidelity, a Pennsylvania corporation, to obtain financing for Limestone's photocopiers. Limestone made payments to Fidelity and engaged in a number of communications with Fidelity regarding the lease agreements.

¶ 24 In both the present case and *Hall–Woolford*, the contacts between the entity in Pennsylvania and the non-resident party merely consisted of an agreement, payments or a payment invoice, and several follow-up communications. Therefore, like

the non-resident party in *Hall–Woolford*, we find that Limestone's limited contractual relationship with a Pennsylvania corporation did not create sufficient minimum forum contacts to sustain the trial court's jurisdiction.

¶ 25 To further support our finding, we contrast the present case with our recent case of *GMAC v. Keller*, in which we found that the non-resident party had sufficient forum contacts with Pennsylvania to support the trial court's personal jurisdiction. In *GMAC*, Mr. Keller, while residing in Florida, purchased an automobile from a dealership in Gettysburg, Pennsylvania. *GMAC*, 737 A.2d at 280. Mr. Keller had previously purchased two vehicles over a three-year period from this same dealership. *Id.* The negotiations for the latest sales contract transpired in Florida. *Id.* The retail installment sales contract provided that it was for use in Pennsylvania and that the dealership would provide financing. *Id.* Prior to purchasing the vehicle, Mr. Keller elected to finance the vehicle, as he had the previous two, through GMAC and filed an application for financing with GMAC's office in Harrisburg, Pennsylvania. *Id.* GMAC approved financing for Mr. Keller, and purchased the sales agreement from the dealership. *Id.* The dealership delivered the vehicle to Florida. *Id.* Mr. Keller made monthly payments to GMAC in Harrisburg. *Id.*

¶ 26 We reviewed the totality of the circumstances surrounding the transaction between Mr. Keller and GMAC. Specifically, we looked at the contract negotiations, the contemplated future consequences of the contract, and the actual course of dealings. We concluded that Mr. Keller purposefully directed his activities to a Pennsylvania corporation. *GMAC*, 737 A.2d at 282. We based our conclusion that although the dealership *may* have instigated the contact with GMAC, Mr. Keller submitted the loan application to GMAC for approval, and Mr. Keller knowingly created a continuing obligation to

make payments to GMAC in Pennsylvania. *Id.* For whatever reason, Mr. Keller elected to finance the purchase of his vehicle through GMAC. Therefore, Mr. Keller purposely derived a benefit from conducting his financing through a Pennsylvania corporation. *Id.* This conduct coupled with the two previous transactions with GMAC in Pennsylvania over the past several years established the minimum contacts between Mr. Keller and the forum for the courts of this Commonwealth to assume personal jurisdiction over Mr. Keller. *Id.*

¶ 27 By comparison, the contacts in the present case are more tenuous than the contacts in *GMAC*. First, Limestone's initial contact was with J.R. Ray, an Alabama Minolta copier vendor. The contact with Pennsylvania was initiated when the Minolta copier vendor sent the lease agreement to Fidelity, a Minolta copier financier. This initial contact is different than that in *GMAC*, because in that case, Mr. Keller initiated the contact with a Pennsylvania car dealership and a Pennsylvania financing company. In the present case, Limestone continued the contact with Pennsylvania when it sent payments to Fidelity and corresponded with Fidelity regarding the lease agreements. Limestone's only contacts involved the lease agreements. However, in *GMAC*, Mr. Keller had dealt previously with GMAC, and these contacts led this court to find that he purposefully directed his activities towards a Pennsylvania company and availed himself to the forum's jurisdiction. Our conclusion in the present case differs from *GMAC*, because Limestone did not have previous dealings with Fidelity, and its payments to a Pennsylvania company alone were not sufficient to establish that Limestone purposefully availed itself to Pennsylvania's jurisdiction.

¶ 28 In sum, we find Limestone's conduct did not constitute sufficient minimum forum contacts to sustain *in personam* jurisdiction.[4]

---

4. Since we have determined that the trial court did not have *in personam* jurisdiction over Limestone, we need not address the remaining issues on appeal.

¶ 29 Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

¶ 30 DEL SOLE, J., files a Concurring Statement.

DEL SOLE, J., concurring:

¶ 1 While I join the Majority, I write separately to express my concern that the trial court refused to be bound by a prior decision on the same issue decided by another judge in the Court of Common Pleas of Montgomery County. Trial judges in multi-judge districts are required to follow precedent established in the same court on similar facts. *Yudacufski v. Commonwealth, Dep't of Transportation*, 499 Pa. 605, 454 A.2d 923, 926 (1982).