AVENTIS PASTEUR, INC., Appellee,

v.

ALDEN SURGICAL CO., INC., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 3, 2003.

Filed April 26, 2004.

George W. Westervelt, Stroudsburg, for appellant.

Teal C. Gilbert, Scranton, for appellee.

Before: DEL SOLE, P.J., MUSMANNO and TAMILIA, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Alden Surgical Co., Inc. ("Alden") appeals from the judgment entered in favor of Aventis Pasteur, Inc. ("Aventis") in this action filed by Aventis alleging breach of contract. We affirm.

¶ 2 The pertinent facts of this case are as follows:

The Plaintiff [Aventis] is a Delaware Corporation that maintains its principal place of business in Swiftwater, Monroe County, Pennsylvania where it manufactures vaccines and biologics. Defendant [Alden] is a New York Corporation that maintains its principal place of business in Mineola, New York. During the course of their business relationship, [Alden] contacted [Aventis] at its Swiftwater offices by telephone on 16 separate occasions, placing 16 separate purchase orders amounting to Nine Hundred Twenty–Four Thousand, Three Hundred Sixty–Four and Eighty One–Hundredths ($924,364.80) Dollars for the vaccine product Tubersol. The orders were processed, and the Tubersol was manufactured at [Aventis's] plant in Swiftwater, Pennsylvania and [Aventis] delivered the vaccine to [Alden's] place of business in New York. [Alden] has not paid for the Tubersol, and [Aventis] brought this cause of action to recover the $924,364.80 balance that [Alden] has not paid.[1]

On November 30, 2001[,] [Aventis] filed a Complaint to which [Alden] filed ... Preliminary Objections. The Preliminary Objections raise[d] two issues. First, that this [c]ourt lacks jurisdiction over the subject matter of the case and second, that we lack personal jurisdiction over [Alden], a New York Corporation. [Alden] [gave] us no basis to challenge the subject matter jurisdiction. Thus, we dismiss[ed] the Preliminary Objections on that issue.

Trial Court Opinion, 3/12/02, at 1–2.

¶ 3 The trial court found no merit to Alden's claim that the court lacked personal jurisdiction over Alden, and thus, dismissed the Preliminary Objections on that issue also. The case then proceeded to a non-jury trial, after which the trial court found in favor of Aventis in the amount of $914,364.80. Alden subsequently filed post-trial Motions, which the trial court denied. The trial court entered judgment in favor of Aventis in the amount of $914,364.80 plus interest. Alden then filed the instant timely appeal, claiming that the trial court erred in concluding that it could properly assert personal jurisdiction over a New York corporation that did no business in Pennsylvania. *See* Brief of Appellant at 2.

■ ¶ 4 "Our standard of review of the trial court['s] overruling [of] preliminary objections is to determine whether the trial court committed an error of law." *Mar–Eco, Inc. v. T & R and Sons Towing and Recovery, Inc.*, 837 A.2d 512, 514 (Pa.Super.2003). "When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." *Id.* That standard is as follows:

> The material facts set forth in the complaint as well as all inferences reasonably deducible therefrom must be admitted as true. The court must determine from the facts averred, whether the law says with certainty that no recovery is possible. If doubt exists whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer.

*Smith v. Weaver*, 445 Pa.Super. 461, 665 A.2d 1215, 1216 (1995) (citations omitted).

¶ 5 Alden first contends that the trial court erred in dismissing its preliminary objections challenging personal jurisdiction

---

1. It was established at trial that Alden paid $10,000 of the amount owed to Aventis for purchases of Tubersol. N.T., 12/20/02, at 21. Thus, the trial court determined in its Findings of Fact that the balance owed to Aventis by Alden was $914,364.80. Findings of Fact, 12/24/02, at 2.

because Alden did not "do business" in Pennsylvania as required by the long-arm statute, 42 Pa.C.S.A. § 5322. Alden asserts that a series of telephone orders over a two-month period does not constitute "doing business" as set forth in the long-arm statute, and cites *Hall–Woolford Tank Co. v. R.F. Kilns*, 698 A.2d 80 (Pa.Super.1997) and *Poole v. Sasson*, 122 F.Supp.2d 556 (E.D.Pa.2000) in support of its position.

¶ 6 The Pennsylvania long-arm statute provides in pertinent part as follows:

> **(a) General rule.**—A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person:
>
> (1) Transacting any business in this Commonwealth. . . .

42 Pa.C.S.A. § 5322; *see also Fidelity Leasing Inc. v. Limestone Co. Bd. of Education*, 758 A.2d 1207, 1211 (Pa.Super.2000) (stating that "[a] tribunal of this Commonwealth may exercise personal jurisdiction over a person who transacts any business in this Commonwealth").

¶ 7 We note first that the cases cited by Alden, *i.e.*, *Hall–Woolford* and *Poole*, were each decided on the basis of whether the non-resident defendant had sufficient "minimum contacts" with Pennsylvania to support the exercise of personal jurisdiction over the defendant. *See Hall–Woolford*, 698 A.2d at 82–84; *Poole*, 122 F.Supp.2d at 558–59.[2]

¶ 8 In the instant case, Alden has raised the issue of the sufficiency of its contacts with Pennsylvania in its second argument on appeal. Because the cases Alden cites do not address the issue of "transacting business" separately from the minimum contacts issue, we will proceed to a consideration of Alden's minimum contacts argument.

¶ 9 Alden claims that the trial court's exercise of jurisdiction over it does not comport with due process because its contacts with Pennsylvania are insufficient to satisfy the due process standard. Alden relies on *Hall–Woolford* and *Fidelity Leasing*, 758 A.2d at 1207, in support of its assertion.

¶ 10 The constitutional limitations on the assertion of specific personal

---

**2.** Alden further contends that its conduct in the instant case demonstrates that it was simply a "passive purchaser, rather than a foreign corporation doing business in Pennsylvania." *See* Brief of Appellant at 8. For this proposition, Alden cites *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 233 (6th Cir.1972).

We are not bound by decisions of federal courts inferior to the United States Supreme Court, even though we may look to them for guidance in interpretation of federal case law. *Commonwealth v. Travaglia*, 541 Pa. 108, 130 n. 15, 661 A.2d 352, 363 n. 15 (1995). Thus, we are not bound by the decision of the Sixth Circuit Court of Appeals cited by Alden. In addition, the *In–Flight Devices* case does not support Alden's argument. In that case, an Ohio manufacturer/seller of airplane parts filed an action against a Minnesota buyer/distributor for breach of contract in U.S. District Court for the Southern District of Ohio. *In–Flight Devices*, 466 F.2d at 222. The Minnesota buyer filed preliminary objections to the complaint, alleging lack of personal jurisdiction, and the Ohio trial court dismissed the action. On appeal, the Court of Appeals for the Sixth Circuit reversed, finding that the exercise of jurisdiction was permitted under the Ohio long-arm statute, and that the District Court's exercise of jurisdiction did not violate due process. *Id.* at 236. Further, the Court of Appeals stated that "[w]e can properly say this Defendant [the Minnesota corporation]—by virtue of its entering of a contract to be performed in Ohio—'transacted business' in that State" for purposes of the Ohio long-arm statute. *Id.* at 228. Thus, this case does not support Alden's claim that it was merely a passive purchaser who did not "transact business" within the meaning of the Pennsylvania long-arm statute.

jurisdiction over a non-resident defendant are as follows: "(1) the non-resident defendant must have sufficient minimum contacts with the forum state and (2) the assertion of *in personam* jurisdiction must comport with fair play and substantial justice." *Fidelity Leasing,* 758 A.2d at 1211 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

> In order to meet constitutional muster, a defendant's contacts with the forum state must be such that the defendant could reasonably anticipate being called to defend itself in the forum.... Random, fortuitous[,] and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of personal jurisdiction. That is, the defendant must have purposefully directed its activities to the forum and conducted itself in a manner indicating that it has availed itself of the forum's privileges and benefits such that it should also be subjected to the forum state's laws and regulations.

*GMAC v. Keller,* 737 A.2d 279, 281 (Pa.Super.1999) (citations omitted).

> It is well-settled that an individual's contract with a non-resident party *alone* cannot automatically establish sufficient minimum contacts in the other party's home state. Rather, the totality of the circumstances, including the parties' prior negotiations, their contemplated future consequences, their actual course of dealing and the terms of the contract must be evaluated in order to determine whether the non-resident defendant is subject to the Commonwealth's forum. It is necessary that the defendant's contacts are purposeful and voluntary and give rise to the cause of action.

*Fidelity Leasing,* 758 A.2d at 1211 (citations omitted) (emphasis in original).

■ ¶ 11 In the instant case, the parties' course of dealing included sixteen separate purchase orders, initiated by Alden, totalling the substantial sum of $924,364.80, to Aventis's Pennsylvania office for a vaccine product manufactured by Aventis in Pennsylvania. These orders were placed over a two-month period, from March 8, 2001 to May 1, 2001. *See* Trial Court Opinion, 3/12/02, at 4. Thus, as the trial court stated, "[Alden] has reached out to Pennsylvania ...." *Id.* at 5.

¶ 12 The record shows that each separate order of Tubersol totalled $57,772.80. The orders were made every couple of days over the two-month period. It is clear from the evidence of record that Alden's contacts with Pennsylvania, as demonstrated by its regular, continuing purchases over the two-month period, were purposeful and voluntary. Further, Alden's contacts with Pennsylvania, as evidenced by the purchases of the vaccine, were the basis of the present cause of action. Thus, we agree with the trial court's determination that Alden's contacts with Pennsylvania were sufficient to meet the "minimum contacts" requirements of due process.

¶ 13 In addition, we agree with the trial court's determination that its exercise of personal jurisdiction over Alden comported with notions of fair play and substantial justice. *Id.* at 5. As the trial court stated:

> Pennsylvania has an important interest in protecting the businesses within its borders from nonpayment of goods delivered. Also, as [Alden] was an active purchaser, [Alden] should not reap the rewards of a Pennsylvania corporation while not being subject to the laws of Pennsylvania.

*Id.*

¶ 14 The *Hall–Woolford* case, relied on by Alden, is distinguishable from the in-

stant case. In *Hall–Woolford*, the Pennsylvania plaintiff initiated contact with the New York defendant, Kilns, which contact resulted in a contract between the parties. This Court in *Hall–Woolford* ultimately held that Kilns's contacts with Pennsylvania were not sufficient to establish the requisite minimum contacts for an assertion of personal jurisdiction over Kilns. In contrast, in the instant case, the contacts with Pennsylvania were initiated by Alden. Further, in *Hall–Woolford*, the only contacts Kilns had with Pennsylvania were several follow-up telephone calls made after Hall Woolford's initial contact with Kilns. *Hall–Woolford*, 698 A.2d at 83–84. This Court described those contacts by Kilns with Pennsylvania as "attentuated and random." *Id.* at 84. In contrast, the contacts of Alden in the instant case were regular and continuous, resulting in the placement of sixteen orders over a two-month period. Further, in *Hall–Woolford*, the product that was the subject of the contract was not produced or treated in Pennsylvania, unlike the present case, in which the product sought by Alden was manufactured in Pennsylvania.

¶ 15 Similarly, the *Poole* case, cited by Alden, is distinguishable. In that case, the Pennsylvania plaintiffs initiated contact with the New York defendant, a certified public accountant. The defendant performed accounting services for the plaintiffs in New York, and made some phone calls to the plaintiffs related to their tax returns. *Poole*, 122 F.Supp.2d at 559. These facts are quite different from the instant case, in which Alden initiated the contacts with Pennsylvania, and continued those contacts on a regular and continuous basis for two months. Further, in this case, the contract between the parties, for the purchase of Tubersol, was performed in Pennsylvania, where the product was manufactured and prepared for shipping to Alden.

¶ 16 *Fidelity Leasing*, cited by Alden, is also distinguishable from the present case. In *Fidelity Leasing*, the defendant, a school board located in Alabama, met with a representative of J.R. Ray Company, an Alabama company that was a dealer of office copiers. *Fidelity Leasing*, 758 A.2d at 1209. The meetings took place in Alabama. J.R. Ray Company negotiated a lease with the school board to provide them with copiers, and Fidelity Leasing provided the financing to the school board for the leases. *Id.* The school board was to make monthly payments to Fidelity Leasing in Pennsylvania, and if the school board defaulted on any of the leases, it was to pay Fidelity the remaining balance on the lease, the residual value of the equipment, and any costs. *Id.* The leases provided that they were entered into in Pennsylvania, with Pennsylvania law governing the terms of the agreements. *Id.* After the school board defaulted on the leases, Fidelity Leasing filed an action in Pennsylvania for breach of the lease agreements. The trial court denied the school board's preliminary objections to the complaint based on lack of personal jurisdiction. *Id.*

¶ 17 On appeal, this Court reversed, finding that the school board presented evidence that "it has virtually no ties with Pennsylvania." *Id.* at 1211. This Court indicated that the school board is located in Alabama, and never contacted Fidelity Leasing directly. Further, all of the negotiations for the leases occurred in Alabama, an Alabama company, J.R. Ray, supplied the copiers, and the copiers were used in Alabama. *Id.*

¶ 18 In contrast, in the instant case, Alden contacted Aventis in Pennsylvania regularly and continuously for a two-month period. The product that Alden sought was manufactured and prepared for shipping in Pennsylvania. Thus, Alden's

contacts with the forum were significantly greater than those of the school board in *Fidelity Leasing*.

¶ 19 Based on the above reasoning, we conclude that there is no merit to Alden's claim that it did not have sufficient contacts with Pennsylvania to justify the exercise of personal jurisdiction over it in this breach of contract action. Thus, the trial court did not err in dismissing Alden's preliminary objections.

¶ 20 Judgment affirmed.