**NUTRITION MANAGEMENT SERVICES COMPANY,**
Appellant

v.

**John HINCHCLIFF and True, Walsh & Miller, LLP, Appellees.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 2006.

Filed June 7, 2007.

Jack A. Meterson, Philadelphia, for appellant.

Madeline S. Baio, Philadelphia, for appellee.

BEFORE: JOYCE,* KLEIN and BOWES, JJ.

OPINION BY BOWES, J.:

¶ 1 Nutrition Management Services Company ("NMS") appeals from the January 11, 2006 order granting the preliminary objections of John Hinchcliff and the law firm of True, Walsh, & Miller, LLP ("True Walsh") and dismissing this action for lack of personal jurisdiction. After careful review, we affirm.

¶ 2 The record establishes that NMS is a Pennsylvania corporation that manages food service facilities for various types of healthcare institutions. In March 1995, NMS contracted with Sheehan Memorial Hospital ("Sheehan") to provide food management services at Sheehan's facility in Buffalo, New York. In November 1998, however, NMS terminated the contract when Sheehan failed to make scheduled payments to NMS. Thereafter, counsel for NMS, the law firm of Powell Trachtman, Logan, Carrle, & Lombardo, PC ("Powell Trachtman"), contacted Sheehan's attorneys, True Walsh, in an effort to collect the unpaid funds, which totaled approximately $190,000. True Walsh ac-

---

* Judge Joyce did not participate in the decision of this appeal.

knowledged the debt and proposed a payment plan; however, the matter was never resolved, and Powell Trachtman filed a demand for arbitration in Philadelphia on behalf of NMS.

¶ 3 Following the demand, Powell Trachtman and True Walsh "exchanged numerous letters over the following months concerning settlement of the outstanding sums due and owing to NMS, and Sheehan made several payments against the outstanding balance." Complaint, 6/15/04, at 4 ¶ 15. Sheehan and NMS subsequently entered into a settlement agreement that was originally outlined in a letter drafted by John Hinchcliff, Appellee herein, who is a partner at True Walsh. The letter provided, *inter alia*, that Sheehan would agree to make several monthly payments totaling $183,000 plus interest and sign a confession of judgment affidavit that would enable NMS to obtain a judgment in New York at any point after January 10, 2001, thereby eliminating the need to hold an arbitration hearing and obtain an award. The affidavit and supporting documentation were filed in the County Clerk's Office of Erie County, Buffalo, New York, on January 10, 2001.

¶ 4 Sheehan subsequently failed to make payments owed under the settlement agreement and did not cure the breach. As a result, NMS confessed judgment in May 2001 and garnished one of Sheehan's bank accounts. Mr. Hinchcliff promptly contacted Powell Trachtman and stated that if NMS did not lift the garnishment, Sheehan would be forced to file for bankruptcy. NMS responded that it would lift the garnishment if Sheehan made an immediate lump sum payment and gave NMS a security interest in collateral sufficient to cover the remaining debt. Mr. Hinchcliff replied that Sheehan was amenable to those terms and would provide NMS with a perfected security interest in

a pool of funds maintained pursuant to the New York State Health Care Reform Act ("HCRA"), which requires local health care providers to contribute a percentage of their gross inpatient receipts to an account that is used to compensate hospitals that provide services for indigent patients. Thereafter, at NMS's request, Mr. Hinchcliff authored an opinion letter indicating that: (1) a valid security interest could be created in the HCRA funds; (2) once the appropriate Uniform Commercial Code ("UCC") documents were filed in New York, NMS would have a first position perfected security interest in Sheehan's right to receive disbursements from the HCRA funds; and (3) Mr. Hinchcliff was submitting the letter to induce NMS to accept the security interest agreement, the proposed payment plan, and to lift the garnishment on Sheehan's bank account.

¶ 5 Based upon Mr. Hinchcliff's representations that True Walsh would file the UCC documents necessary to perfect NMS's security interest in the HCRA funds, NMS lifted the garnishment, and Sheehan transferred $100,000 to NMS's bank account. Then, in July 2001, Sheehan made another payment to NMS in accordance with the proposed payment plan. However, Sheehan never sent the August and September 2001 payments and failed to respond to NMS's communications requesting an explanation for the missed payments. Thus, in February 2002, NMS instituted proceedings to exercise its right to collect Sheehan's disbursements from the HCRA funds.

¶ 6 In April 2002, NMS learned that Sheehan had filed for bankruptcy. Although those proceedings were dismissed in 2003, Sheehan filed a second bankruptcy action in March 2004. Sheehan's bankruptcy attorneys argued that NMS's security interest in the HCRA funds was never perfected because no UCC forms had been

filed in Albany, New York. When NMS confirmed that True Walsh never filed the requisite UCC documents in Albany, which precluded NMS from collecting the balance of Sheehan's unpaid bills, NMS commenced this action against Mr. Hinchcliff and True Walsh in Montgomery County, Pennsylvania, asserting causes of action for breach of contract, fraud, and negligent misrepresentation.[1] In its complaint, NMS averred that jurisdiction was proper in Pennsylvania because the defendants: (1) engaged in extensive correspondence with Pennsylvania residents while negotiating settlement agreements and UCC filings; (2) participated in preliminary legal proceedings after NMS filed a demand for arbitration in Philadelphia County; (3) acted as agents for Sheehan, which regularly conducted business with NMS; and (4) drafted a UCC security agreement which provided that any dispute arising under that contract could be litigated in Pennsylvania.

¶ 7 Mr. Hinchcliff and True Walsh (collectively "Appellees") filed preliminary objections seeking to have the action dismissed for lack of personal jurisdiction. In support of their claim that they had insufficient contacts with Pennsylvania to confer personal jurisdiction over them, Appellees averred that they: (1) are residents of New York and have never maintained an office in Pennsylvania; (2) do not solicit business or advertise in Pennsylvania; (3) do not employ or maintain agents in Pennsylvania; (4) do not own, possess, use, or rent land in Pennsylvania; (5) are not licensed to practice law in Pennsylvania; and (6) have never contracted to provide legal services in Pennsylvania or appeared in a Pennsylvania courtroom. In addition,

Appellees argued that the mere act of placing telephone calls, sending electronic mail, letters, and facsimiles to a Pennsylvania entity in the course of representing a local client in a matter that involved New York law did not support a finding of specific personal jurisdiction and that they were not bound by the jurisdictional language in the UCC security agreement because, *inter alia*, they were not signatories to the agreement.

¶ 8 NMS filed an answer and brief in opposition to Appellees' preliminary objections. In essence, NMS argued that the objections should be overruled because Appellees: (1) failed to submit adequate evidence to prove that they did, in fact, have insufficient contacts with Pennsylvania; and (2) purposefully availed themselves of Pennsylvania's benefits and protections by negotiating contracts with NMS, promising to file UCC documents for NMS, causing financial harm to NMS, and acting as an agent of Sheehan, which regularly conducted business with NMS in Pennsylvania.

¶ 9 Following oral argument, the trial court granted Appellees' preliminary objections on January 11, 2006. This timely appeal followed, wherein NMS contends that the court's ruling was in error because Appellees: (1) failed to develop an evidentiary record that would have enabled the trial court to properly decide the issue raised in their preliminary objections; and (2) had sufficient "minimum contacts" with Pennsylvania to support the exercise of specific personal jurisdiction over them in this instance.

¶ 10 In reviewing the propriety of an order disposing of preliminary objections to a trial court's exercise of personal

---

1. The record indicates that True Walsh did attempt to file the necessary UCC documents in Albany on one occasion, but they were rejected by the Department of State because the print quality was extremely poor, and they were difficult to read. *See* Answer to Preliminary Objections, Exhibit M.

jurisdiction over a party, we apply the following standard of review:

> When preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt.... Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party.

*King v. Detroit Tool Company*, 452 Pa.Super. 334, 682 A.2d 313, 314 (1996) (quoting *Scoggins v. Scoggins*, 382 Pa.Super. 507, 555 A.2d 1314, 1317 (1989)).

■ ¶ 11 Herein, NMS initially argues that the trial court's order was premature because "there was no record evidence presented upon which the trial court could decide the issue of *in personam* jurisdiction over Appellees Hinchcliff or True Walsh." NMS's brief at 10. Consistent with this view, NMS requests that we vacate and remand for further proceedings.

■ ¶ 12 As NMS correctly asserts in its brief, the moving party has the burden of supporting its preliminary objections to the trial court's jurisdiction. *Schmitt v. Seaspray–Sharkline, Inc.*, 366 Pa.Super. 528, 531 A.2d 801 (1987). Moreover, this Court has observed:

> Once the plaintiff has produced some evidence to support jurisdiction, the defendant must come forward with some evidence of his own to dispel or rebut the plaintiff's evidence. The moving party may not sit back and, by the bare allegations as set forth in the preliminary objections, place the burden upon the plaintiff to negate those allegations. It is only when the moving party properly raises the jurisdictional issue that the burden of proving jurisdiction is upon the party asserting it. **If an issue of fact is raised, the court shall take evidence by deposition or otherwise.**

> The court may not reach a determination based upon its view of the controverted facts, but must resolve the dispute by receiving evidence thereon through interrogatories, depositions, or an evidentiary hearing. **Where an essential factual issue arises from the pleadings as to the scope of a defendant's activities within the Commonwealth, the plaintiff has the right to depose defendant as to his activities within the Commonwealth, and the court must permit the taking of the deposition before ruling on the preliminary objections.** Where neither party presents evidence by which the court can properly resolve the issue, it is appropriate to remand with directions that an order be entered allowing the parties a reasonable period of time in which to present evidence by deposition, interrogatories or otherwise.

*Id.* at 803 (citations omitted) (emphases added).

■ ¶ 13 In the instant case, NMS alleged in its complaint that the trial court could exercise specific personal jurisdiction over Appellees based on their actions performed on behalf of Sheehan. *See* Complaint, 6/15/04, at 2. Appellees responded that their representation of Sheehan was insufficient as a matter of law to confer *in personam* jurisdiction over them in this forum. *See* Preliminary Objections, 7/6/04, at 6 ("Specific personal jurisdiction does not exist in the present case as the only contacts between [Appellees] and Pennsylvania relevant to the allegations in the complaint consist of correspondence via mail, email, telephone and facsimile to [NMS's] legal counsel, Powell Trachtman ... and a conference call and correspondence related to scheduling with the American Arbitration Association in Philadelphia, Pennsylvania."). In response, NMS clarified that it "[did] not seek to

prove that [the trial court] has general jurisdiction over [Appellees]," answer to preliminary objections, 7/23/04, at ¶ 26, and reiterated its argument that Appellees' representation of Sheehan gave rise to specific personal jurisdiction.[2] See Brief in opposition to objections, 8/5/04, at 1.

¶ 14 Contrary to NMS's position, neither party presented evidence that raised factual issues which required the creation of an evidentiary record.[3] Appellees readily admitted that they made telephone calls and sent correspondence to Powell Trachtman while representing Sheehan; thus, the issue raised by their preliminary objections was whether the allegations in NMS's complaint were legally sufficient to sustain specific personal jurisdiction in Pennsylvania. As this presented a question of law, there was no need to develop an evidentiary record; indeed, there is no indication that NMS sought to depose any attorneys from True Walsh prior to oral argument. Moreover, NMS fails to identify a single factual issue that needs to be resolved. Thus, we will not remand for further proceedings.

■ ¶ 15 NMS also contends that the trial court erred in determining that Appellees had insufficient contacts with Pennsylvania to support a finding of specific personal jurisdiction. The following legal principles are relevant:

> The constitutional limitations on the assertion of specific personal jurisdiction over a non-resident defendant are as follows: "(1) the non-resident defendant must have sufficient minimum contacts with the forum state and (2) the assertion of *in personam* jurisdiction must comport with fair play and substantial justice." *Fidelity Leasing [v. Limestone Co. Bd. of Education]*, 758 A.2d at 1211 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

> In order to meet constitutional muster, a defendant's contacts with the forum state must be such that the defendant could reasonably anticipate being called to defend itself in the forum.... Random, fortuitous[,] and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of personal jurisdiction. That is, the defendant must have purposefully directed its activities to the forum and conducted itself in a manner indicating that it has availed itself of the forum's privileges and benefits such that it should also be subjected to the forum state's laws and regulations.

> *GMAC v. Keller*, 1999 PA Super 213, 737 A.2d 279, 281 (Pa.Super.1999) (citations omitted).

> It is well-settled that an individual's contract with a nonresident party *alone* cannot automatically establish sufficient minimum contacts in the other party's home state. Rather, the totality of the circumstances, including the parties' prior negotiations, their contemplated fu-

---

**2.** Under 42 Pa.C.S. §§ 5301–5329, Pennsylvania courts may exercise two types of personal jurisdiction over a non-resident defendant. *See Efford v. The Jockey Club*, 796 A.2d 370 (Pa.Super.2002). The first type is general jurisdiction, which is founded upon the defendant's general activities within the forum, as evidenced by systematic contacts with the state. *Id.* The second type is specific jurisdiction, which is premised upon the particu-

lar acts of the defendant that gave rise to the underlying cause of action. *Id.*

**3.** Mr. Hinchcliff did file an affidavit with the preliminary objections; however, it simply buttressed Appellees' contention that Mr. Hinchcliff's actions on behalf of Sheehan were insufficient to confer personal jurisdiction over him.

ture consequences, their actual course of dealing and the terms of the contract must be evaluated in order to determine whether the non-resident defendant is subject to the Commonwealth's forum. It is necessary that the defendant's contacts are purposeful and voluntary and give rise to the cause of action. *Fidelity Leasing*, 758 A.2d at 1211 (citations omitted) (emphasis in original).

*Aventis Pasteur, Inc. v. Alden Surgical Company*, 848 A.2d 996, 999–1000 (Pa.Super.2004).

■ ¶ 16 Pennsylvania courts may exercise *in personam* jurisdiction over a non-resident if jurisdiction is conferred under our long-arm statute, 42 Pa.C.S. § 5322, and the exercise of jurisdiction would not offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *C.J. Betters Corporation v. Mid South Aviation Services, Inc.*, 407 Pa.Super. 511, 595 A.2d 1264 (1991). The long-arm statute provides that the jurisdiction of Pennsylvania courts shall extend to all non-resident defendants "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b).

■ ¶ 17 In the case at bar, NMS argues that Pennsylvania's long-arm statute confers specific personal jurisdiction over Appellees because they: (1) knowingly entered into agreements with NMS, which is based in Pennsylvania; (2) caused harm to NMS by failing to file the necessary UCC documents in New York; and (3) acted as the agent of Sheehan, which regularly con-

ducted business with NMS. Appellees contest this assertion, arguing that their contacts with Pennsylvania were "minimal, random, and attenuated." Appellees' brief at 12. For reasons discussed *infra*, we agree with the trial court that Appellees lacked sufficient contacts with this forum to support the exercise of specific personal jurisdiction in this case.

¶ 18 As noted, NMS's attorneys contacted True Walsh in 1998 to collect monies due under Sheehan's contract with NMS and subsequently filed a demand for arbitration in Philadelphia County. However, no hearings ever transpired in Philadelphia because the matter was resolved through a settlement agreement wherein Sheehan agreed to make monthly payments to NMS and file documents in New York that would enable NMS to confess judgment against Sheehan without resorting to arbitration.[4] When NMS later confessed judgment and garnished Sheehan's bank account, Mr. Hinchcliff contacted Powell Trachtman and stated that Sheehan would be forced to file for bankruptcy if NMS did not lift the garnishment. NMS responded that it would lift the garnishment if Sheehan gave it a perfected security interest in collateral sufficient to cover the remaining debt and if True Walsh issued an opinion letter outlining the terms of the agreement. Consequently, Mr. Hinchcliff issued the opinion letter and averred that True Walsh would file UCC documents in New York giving NMS a security interest in Sheehan's right to receive distributions from the HCRA funds.

¶ 19 Viewing the record in the light most favorable to NMS, we find that the trial court's ruling was proper. NMS's conten-

---

4. NMS concedes in its brief that no arbitration hearings were conducted in Philadelphia. Rather, Appellees simply "participated in . . . the selection of the arbitrator who would decide the matter, various pre-hearing tele- phone conferences, communications . . . with the Philadelphia, Pennsylvania office of the American Arbitration Association ("AAA"), and the payment of fees to the AAA in Phila- delphia." NMS's brief at 7–8.

tion that the parties have had "an ongoing relationship" since 1998 is unfounded. NMS's brief at 15. The record reveals that at all relevant times, Appellees were providing legal services to Sheehan within the State of New York and communicated with NMS through its counsel, Powell Trachtman, regarding Sheehan's delinquent payments to NMS. No one from True Walsh ever traveled to Pennsylvania to appear in court or negotiate settlements in this case, and although Mr. Hinchcliff issued an opinion letter to induce NMS to accept the UCC security agreement, he drafted that letter at NMS's request. *See* Answer to Preliminary Objections, Exhibit I, at 1. Furthermore, the fact that Appellees made telephone calls and sent correspondence to NMS and Powell Trachtman does not lead to the conclusion that Appellees purposefully availed themselves of the privileges and benefits of our Commonwealth to the extent that they should have anticipated having to defend a lawsuit in Pennsylvania. *See Hall–Woolford Tank Company, Inc. v. R.F. Kilns, Inc.*, 698 A.2d 80 (Pa.Super.1997) (fact that parties' contract necessitated several follow-up telephone calls did not confer specific personal jurisdiction over non-resident defendant in breach-of-contract action). Hence, we find that Appellees' forum-related activities were attenuated and random and therefore insufficient to sustain the exercise of personal jurisdiction.

¶ 20 In so holding, we reject NMS's argument that this case is similar to *General Motors Acceptance Corporation v. Keller*, 737 A.2d 279, 282 (Pa.Super.1999), where we found that a non-resident defendant who purchased three vehicles from a Pennsylvania dealership and obtained financing through another Pennsylvania company had "purposefully availed himself of the privileges and benefits of conducting business in this Commonwealth." Unlike the defendant in that case, who knowingly engaged in multiple business transactions with Pennsylvania entities over a four-year period, Appellees did not purposefully direct their activities to this forum.

¶ 21 We also reject NMS's contention that our decision in *C.J. Betters, supra*, supports a finding of personal jurisdiction herein because Appellees acted as the agents of Sheehan, which conducted business with NMS. In *C.J. Betters*, a Pennsylvania corporation contacted Mid South Aviation Services, Inc. ("Mid South"), a Florida company that brokered aircraft and advertised its services in Pennsylvania, and inquired about obtaining a jet. Mid South found a suitable aircraft owned by R.E. Shackelford, a North Carolina resident, and arranged for the Pennsylvania corporation to purchase the jet from Shackelford. After the corporation accepted delivery of the jet at a Pennsylvania airport, the aircraft developed mechanical problems, and the corporation subsequently brought suit against Mid South and Shackelford seeking compensation for loss of use and repair costs. Both defendants filed preliminary objections asserting lack of personal jurisdiction, which were granted. The corporation appealed.

¶ 22 On appeal, this Court reversed and remanded, finding that Shackelford and Mid South, which had acted as Shackelford's agent, both had sufficient contacts with Pennsylvania to establish personal jurisdiction in this forum. In reaching this conclusion, we observed that Shackelford knowingly sold his plane to a Pennsylvania corporation and that Mid South: (1) brokered a contract for the sale of a $440,000 aircraft to a Pennsylvania corporation; (2) delivered the aircraft to the buyer at a Pennsylvania airport; and (3) advertised its brokerage business in aviation trade journals that were distributed in Pennsylvania. Given the nature of the defendants' contacts with this forum and the fact that

the aircraft in question had been damaged, repaired, and stored in Pennsylvania, we concluded that this Commonwealth had "a strong interest in resolving this dispute." *Id.* at 1268.

¶ 23 The instant case bears no resemblance to *C.J. Betters,* where this Court found that Shackelford's agent, Mid South, fell within our jurisdiction because it established significant contacts with Pennsylvania through advertising, willfully transacting business with a Pennsylvania corporation, and delivering an aircraft that malfunctioned in Pennsylvania. Considering the nature and circumstances of those acts, we concluded that Mid South "should have reasonably anticipated being sued in Pennsylvania." *Id.* at 1268. In the present action, however, the record indicates that Appellees never entered Pennsylvania on Sheehan's behalf or agreed to provide any services here. We will not find jurisdiction based solely on allegations that Appellees failed to perform an act in New York that purportedly would have benefited NMS after Sheehan, Appellees' New York-based client, filed for bankruptcy. Merely alleging that a non-resident committed an act or omission in another jurisdiction that caused harm to a Pennsylvania resident is insufficient; even if the parties had a contractual relationship, the defendant will not be subjected to litigation in this Commonwealth unless his forum-related activities are sufficient to support the exercise of personal jurisdiction by Pennsylvania courts. *Hall–Woolford Tank Co., supra.* If the non-resident's contacts with this forum are minor, random, and attenuated, our courts cannot exercise personal jurisdiction over him. *Id.*

¶ 24 In the case *sub judice,* the mere fact that NMS suffered pecuniary loss as a result of True Walsh's failure to file UCC documents in New York is not dispositive of the issue at hand, as we must consider the parties' actual course of dealings in determining whether personal jurisdiction lies in Pennsylvania. *Aventis Pasteur, supra.* Considering the allegations in the complaint, the parties' briefs, and the applicable law, we find that Appellees' connections to this forum were random and wholly attributable to their representation of Sheehan in New York relating to the debt owed to NMS. As Appellees did not purposefully avail themselves of the privileges and benefits of our Commonwealth, the trial court properly dismissed the action for lack of personal jurisdiction. *Accord Hall–Woolford Tank Co., supra* (New York company that contracted to dry lumber for Pennsylvania entity had insufficient contacts with this forum to sustain personal jurisdiction); *Fidelity Leasing, Inc. v. Limestone County Board of Education,* 758 A.2d 1207 (Pa.Super.2000) (Alabama resident's agreement to make lease payments to Pennsylvania finance company in order to facilitate acquisition of photocopiers from Alabama vendor did not support exercise of personal jurisdiction over Alabama resident by Pennsylvania courts).

¶ 25 Order affirmed.