2022 PA Super 28

| | | |
|---|---|---|
| BEAN SPROUTS LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LIFECYCLE CONSTRUCTION | : | No. 1467 EDA 2021 |
| SERVICES LLC | : | |

Appeal from the Order Entered June 16, 2021
In the Court of Common Pleas of Monroe County
Civil Division at No(s):  001268-CV-2021

BEFORE:  PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

OPINION BY PANELLA, P.J.:                **FILED FEBRUARY 17, 2022**

Bean Sprouts, LLC, appeals from the order granting the preliminary objections filed by LifeCycle Construction Services, LLC, for lack of personal jurisdiction and dismissing Bean Sprouts' amended complaint without prejudice. On appeal, Bean Sprouts contends LifeCycle is subject to specific personal jurisdiction in Pennsylvania, and, therefore, the case should proceed in Pennsylvania. We affirm.

Bean Sprouts, a construction and excavating company, has its principal place of business in East Stroudsburg, Pennsylvania. LifeCycle, a federal prime contractor engaging in construction projects on military installations throughout the country, has its principal place of business in Fredericksburg, Virginia.

Beginning in 2017, LifeCycle and Bean Sprouts had a contractor/subcontractor relationship for work on five different out-of-state projects, including for the construction of a convention center at Fort Rucker, Alabama, and a recreational vehicle park at Fort Irwin, California. Relevantly, the parties' contracts for the work at Fort Rucker and Fort Irwin included provisions that any dispute would be subject to the laws of Virginia and mediation in Virginia. Further, the contracts specified that any change orders must be submitted in writing.

Nevertheless, the parties established a business practice whereby LifeCycle would verbally issue change orders and Bean Sprouts would complete the work and submit an informal invoice for payment. LifeCycle made payments to Bean Sprouts, by check, mailed to Bean Sprouts' office in Pennsylvania. In August 2019, LifeCycle discontinued payment for verbal change orders on the Fort Irwin and Fort Rucker contracts. Bean Sprouts completed its work based upon LifeCycle's representations regarding future payment; however, LifeCycle failed to make further payments to Bean Sprouts on those contracts. Pursuant to the terms of the contracts, the parties engaged in mediation in Virginia but did not come to a resolution.

Subsequently, Bean Sprouts filed a complaint, and thereafter, an amended complaint in Pennsylvania, alleging LifeCycle had breached the Fort Rucker and Fort Irwin contracts by withholding money owed to Bean Sprouts for work completed. Specifically, Bean Sprouts averred that LifeCycle owed

approximately $180,000 under the Fort Rucker contract and $600,000 under the Fort Irwin contract. LifeCycle filed preliminary objections, arguing that LifeCycle did not have the requisite minimum contacts with Pennsylvania, and, therefore, Bean Sprouts did not have personal jurisdiction over LifeCycle in Pennsylvania.

LifeCycle attached to the preliminary objections an affidavit from its CEO, Sean Haynes. In the affidavit, Haynes stated that LifeCycle does not have physical office space and is not incorporated, organized, or registered to do business in Pennsylvania; LifeCycle's members, managers, and officers live and work in Virginia; and LifeCycle does not target or solicit any residents of Pennsylvania for any work. Haynes indicated that aside from general nationwide subcontractor internet solicitation, LifeCycle does not engage in any advertising targeted to Pennsylvania residents. Haynes emphasized that LifeCycle sought subcontracting bids from numerous companies, including Bean Sprouts. Haynes noted that the contracts were electronically signed by Bean Sprouts and LifeCycle via DocuSign, and no employees travelled to Pennsylvania to negotiate or execute the contracts. Haynes further stated that no in-person meetings between the parties took place in Pennsylvania. Haynes acknowledged LifeCycle had a prior contract for work at a government facility in Carlisle, Pennsylvania in 2015; however, Bean Sprouts did not work on that project.

Bean Sprouts filed an answer to LifeCycle's preliminary objections. Attached to the answer was an affidavit from John Caruso, the manager of Bean Sprouts. Caruso indicated that representatives from LifeCycle contacted Bean Sprouts and requested that Bean Sprouts bid on the subject contracts. Caruso stated that Bean Sprouts moved equipment and employees from Pennsylvania to complete the contracted work at Fort Rucker and Fort Irwin. Caruso further noted that Bean Sprouts communicated with LifeCycle from its Pennsylvania offices but acknowledged that the parties only had in-person meetings in Virginia, California, or Alabama. Caruso also stated that Bean Sprouts' three primary fact witnesses reside in Pennsylvania. Finally, according to Caruso, LifeCycle has withheld payments to Bean Sprouts under the Fort Rucker contract because it sought to protect itself from liability incurred by Bean Sprouts' Pennsylvania employees.

Ultimately, the trial court granted LifeCycle's preliminary objections for lack of personal jurisdiction and dismissed Bean Sprouts' amended complaint without prejudice. This appeal followed.

On appeal, Bean Sprouts raises the following questions for our review:

1. Did the trial court err in finding that no specific personal jurisdiction existed when it det[e]rmined that LifeCycle lacked the minimum contacts with Pennsylvania for specific personal jurisdiction to attach?

2. Did the trial court err in finding that "fair play and substantial justice" did not support Pennsylvania's maintaining jurisdiction?

Brief for Appellant at 5 (capitalization omitted).

When reviewing an order sustaining preliminary objections, our standard of review is *de novo,* and our scope of review is plenary. **See Trexler v. McDonald's Corp.**, 118 A.3d 408, 412 (Pa. Super. 2015). Therefore, this Court must determine whether the trial court erred as a matter of law. **See id.** "Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party." **Nutrition Mgmt. Servs. Co. v. Hinchcliff**, 926 A.2d 531, 535 (Pa. Super. 2007) (citation omitted).

In its first claim, Bean Sprouts contends LifeCycle is subject to specific personal jurisdiction in Pennsylvania. **See** Brief for Appellant at 14. Bean Sprouts argues that LifeCycle's lack of physical contacts with Pennsylvania is not dispositive in determining whether it had minimum contacts in Pennsylvania. **See id.** at 16, 25. Bean Sprouts asserts LifeCycle solicited, and then selected, Bean Sprouts as its subcontractor for the subject contracts, and engaged in continuous, systematic contacts with Pennsylvania over the course of its long-term and ongoing contractual relationships with Bean Sprouts. **See id.** at 18-20, 22-23; **see also id.** at 24 (noting that the contracts were not formed in Virginia). Bean Sprouts highlights that it moved its equipment and employees from Pennsylvania to the worksites; LifeCycle communicated with Bean Sprouts in Pennsylvania regarding the contracts and work to be completed; and LifeCycle paid Bean Sprouts by sending checks to its Pennsylvania office. **See id.** at 18, 19, 23, 24. Bean Sprouts further points

out that LifeCycle sought to protect itself from third-party liability, which established that LifeCycle knew that it could become legally liable to Bean Sprouts' employees in Pennsylvania. ***See id.*** at 19-20. Bean Sprouts also claims Pennsylvania has an interest in protecting businesses from nonpayment for services. ***See id.*** at 23.

Pennsylvania's authority to exercise personal jurisdiction over a non-resident defendant is tested against our long-arm statute, ***see*** 42 Pa.C.S.A. § 5322, and the Due Process Clause of the United States Constitution. ***See Hammons v. Ethicon, Inc.***, 240 A.3d 537, 554 (Pa. 2020). Under Pennsylvania's long-arm statute, courts are permitted to exercise personal jurisdiction over a non-resident defendant "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b).

In assessing personal jurisdiction over out-of-state corporate defendants, courts have recognized a distinction between "general" or "all-purpose" jurisdiction and "specific" or "case-related jurisdiction." ***Hammons***, 240 A.3d at 555. Here, Bean Sprouts raises issues based only on specific jurisdiction. ***See*** Brief for Appellant at 14. Three requirements must be met for a forum to exercise specific jurisdiction over an out-of-state defendant:

(1) Did the plaintiff's cause of action arise out of or relate to the out-of-state defendant's forum-related contacts?

> (2) Did the defendant purposely direct its activities, particularly as they relate to the plaintiff's cause of action, toward the forum state or did the defendant purposely avail itself of the privilege of conducting activities therein?
>
> (3) [W]ould the exercise of personal jurisdiction over the nonresident defendant in the forum state satisfy the requirement that it be reasonable and fair?

***Hammons***, 240 A.3d at 555 (citation omitted).

As LifeCycle objected to the court's exercise of personal jurisdiction, Bean Sprouts bore the burden of establishing the first two requirements of specific jurisdiction. ***See id.*** at 561. If Bean Sprouts met its burden, LifeCycle bore the burden of negating the third requirement. ***See id.***

The trial court concluded Bean Sprouts had failed to establish the first two requirements. Further, the court determined that even if Bean Sprouts had established those requirements, LifeCycle had sustained its burden of proving that jurisdiction in Pennsylvania would be neither reasonable nor fair.

Several considerations impact our review of all three of these requirements. First, we must focus on LifeCycle's connection with Pennsylvania, and not merely LifeCycle's association with Bean Sprouts. ***See Walden v. Fiore***, 571 U.S. 277, 286 (2014). Bean Sprouts cannot be the only link between LifeCycle and Pennsylvania. ***See id.*** at 285. Instead, we must focus on whether LifeCycle's actions are sufficient to establish that it intentionally relied on the machinery of Pennsylvania justice in some fashion. ***See id.*** Finally, we must remain cognizant of the conduct that forms the basis of Bean Sprouts' claim: LifeCycle's failure to pay for work done in Alabama

and California. *See id.* at 289; *Bristol-Myers Squibb Co. v. Superior Ct. of Cal, San Francisco County*, 137 S.Ct. 1773, 1780 (2017) ("specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction") (citation omitted).

On appeal, Bean Sprouts argues the trial court erred. Bean Sprouts highlights several circumstances that it believes establish jurisdiction over LifeCycle: (1) LifeCycle maintained a longstanding business relationship through numerous contracts with Bean Sprouts, a Pennsylvania based company; (2) LifeCycle solicited bids from Bean Sprouts in Pennsylvania for the subcontracting work; (3) LifeCycle sent communications to Bean Sprouts in Pennsylvania; (4) LifeCycle's attempt to avoid third-party liability; (5) LifeCycle sent payments under the contracts to Pennsylvania; (6) Bean Sprouts moved equipment and employees from Pennsylvania to the worksites; and (7) LifeCycle injured Bean Sprouts in Pennsylvania.

We begin by noting that these circumstances at most establish LifeCycle's relationship with Bean Sprouts, not the state of Pennsylvania. And other than LifeCycle sending a request for a bid to Bean Sprouts' Pennsylvania address and communicating about the contracts while Bean Sprouts was in Pennsylvania, none of them represent a purposeful contact with the state. Even then, the request for a bid represents perhaps the slightest possible contact; it was not a legally binding offer, but merely a narrow advertisement directed solely at Bean Sprouts. Likewise, the fact that LifeCycle corresponded

with Bean Sprouts, whose offices were in Pennsylvania, does not by itself constitute purposeful availment of Pennsylvania as a forum. **See Hinchcliff**, 926 A.2d at 538.

Further, the fact that Bean Sprouts allegedly suffered its injury in this matter in Pennsylvania, while not totally irrelevant, nonetheless does not persuade us that the trial court erred. Bean Sprouts' injury is only relevant so far as it can establish that LifeCycle's actions connected it to Pennsylvania. Here, the only connection is that LifeCycle allegedly mailed payment to Bean Sprouts' Pennsylvania address. The trial court was permitted to devalue this factor, as these circumstances do not clearly establish that LifeCycle was purposefully availing itself of Pennsylvania as a forum.

Bean Sprouts relies heavily on two precedents issued by this Court: **Aventis Pasteur, Inc. v. Alden Surgical Co.**, 848 A.2d 996 (Pa Super. 2004) (concluding that a New York company, which had no office or employees in Pennsylvania and placed 16 purchase orders valued at nearly $1 million over a two-month period from a Pennsylvania business, was subject to specific personal jurisdiction in Pennsylvania based upon its purposeful and voluntary contacts with the forum), and **GMAC v. Keller**, 737 A.2d 279, 282 (Pa. Super. 1999) (finding specific jurisdiction over defendant, who lived in Florida, but purchased a vehicle in Pennsylvania, because he availed himself of the jurisdiction by submitting his application for credit to a Harrisburg business, sought financing for automobile purchases from Pennsylvania companies on

two prior occasions, and submitted his payments on the present contract to a Pennsylvania address). We note that it is unclear whether these precedents survive **Walden** intact. However, we need not reach that issue, as both **GMAC** and **Aventis** are distinguishable. Both cases involved out-of-state defendants who intentionally sought out Pennsylvania corporations to do business, and the work encompassed within those contracts was performed in Pennsylvania. Here, LifeCycle merely advertised to Bean Sprouts, who then submitted an offer to LifeCycle. More importantly, while some incidental labor under the contracts may have occurred in Pennsylvania, the crux of the contractual duties occurred in other jurisdictions. Further, the only in-person meetings about the contracts between the parties occurred outside Pennsylvania. As such, neither **GMAC** nor **Aventis** requires that we reverse the trial court here.

Under the circumstances, the trial court was within its discretion to find that LifeCycle's contacts with Pennsylvania pursuant to the contracts were based on where Bean Sprouts chose to locate its office, not because LifeCycle sought to further its business in Pennsylvania or create continuous and substantial consequences in Pennsylvania. **See Moyer**, 979 A.2d at 349; **see also Walden**, 571 U.S. at 285-86.[1] Finally, we observe that LifeCycle's

---

[1] Moreover, while the choice of law provision in the contracts for Virginia is not dispositive in determining jurisdiction, **see Burger King**, 471 U.S. at 482 (stating that a choice of law provision, though alone insufficient to establish jurisdiction, can "reinforce [a] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."), the provision raises

*(Footnote Continued Next Page)*

alleged attempt to avoid third-party liability under Pennsylvania law does not, on its own, establish that LifeCycle purposefully availed itself of Pennsylvania's legal machinery. While this alleged attempt would not necessarily negate other conduct that established purposeful availment, it is logically the opposite of conduct intended to foster a relationship with Pennsylvania as a forum.

Relating to the second **Hammons** factor, Bean Sprouts makes much of the fact that LifeCycle previously worked in Pennsylvania. However, Bean Sprouts was not involved in the project and did not present any evidence about the circumstances of that contract. There is no evidence of how that contract was performed, or even what it involved. In any event, that contract is wholly irrelevant to the conduct at issue here – whether LifeCycle breached its contract with Bean Sprouts. We cannot conclude the trial court erred in determining this prior contract did not establish a connection between LifeCycle and the state of Pennsylvania.

Accordingly, we conclude that, despite the parties' long-term relationship, the trial court did not err or abuse its discretion in finding that Bean Sprouts failed to establish, under the totality of the circumstances, LifeCycle has sufficient minimum contacts with Pennsylvania to justify the exercise of personal jurisdiction. Because we discern no error in these findings,

---

questions regarding the foreseeability that LifeCycle could be haled into court in Pennsylvania.

we need not address whether the trial court erred in concluding that specific jurisdiction would not be fair and reasonable under the circumstances here.[2]

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: 2/17/2022

---

[2] Nevertheless, even if we addressed this claim, we would find no error in the trial court's conclusion that the exercise of personal jurisdiction over LifeCycle in Pennsylvania is not reasonable and fair. In this regard, we agree with the trial court's analysis, which found that the interstate judicial system's interest in obtaining the most efficient resolution to the controversies would be better served if this case was held in Virginia. *See* Trial Court Opinion, 6/16/21, at 8-9. The trial court noted that Virginia is where most of LifeCycle's witnesses are located, LifeCycle's business and assets are located, mediation has already been held, and the laws of Virginia apply. *See id.*