2025 PA Super 210

| | | |
|---|---|---|
| DUMOND, INC., DUMOND CHEMICALS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1785 EDA 2024 |
| THOMAS M. GALGANO AND GALGANO IP LAW PLLC | : | |
| | : | |

Appeal from the Order Entered June 21, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 230602262

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY LAZARUS, P.J.: **FILED SEPTEMBER 19, 2025**

Dumond, Inc., and Dumond Chemicals, Inc. (collectively, Dumond), appeal from the order, entered in the Court of Common Pleas of Philadelphia County, granting the preliminary objections filed by Appellees Thomas M. Galgano (Attorney Galgano) and his law firm, Galgano IP Law PLLC (Law Firm), dismissing Dumond's complaint for lack of personal jurisdiction. We affirm.

Dumond, a company incorporated in New York, manufactures various industrial products and primarily operates out of Pennsylvania. Dumond retained New York-based Attorney Galgano and Law Firm to evaluate one of its products "for potential trademark infringement." Complaint, 6/23/23, at ¶ 9. In 2020, based upon the advice of Attorney Galgano, Dumond began marketing and selling that product. W.M. Barr & Company, Inc., sued Dumond

in the United States District Court for the Western District of North Carolina for trademark infringement. The North Carolina court transferred that case to the Eastern District of Pennsylvania.

The transfer prompted Dumond to sue Attorney Galgano and Law Firm in the Court of Common Pleas of Philadelphia County, alleging that their malpractice caused the federal suit. Galgano filed preliminary objections pursuant to Pa.R.C.P. 1028(a)(1), claiming, *inter alia*, a lack of personal jurisdiction. The trial court dismissed the complaint for lack of jurisdiction.

Dumond filed a timely notice of appeal and the trial court and Dumond have complied with Rule 1925. Dumond raises three claims for our review:

1. Did the [t]rial [c]ourt abuse its discretion in sustaining [Galgano's] preliminary objection to jurisdiction?

2. Did the [t]rial [c]ourt abuse its discretion in sustaining [Galgano's] preliminary objection to venue?

3. Does [the] gist of the action doctrine preclude [Dumond]'s breach of contract claim?

Appellant's Brief, at 6.

Our standard of review is well-settled.

When we review the trial court's ruling on preliminary objections, we apply the same standard as the trial court. [**Trexler v. McDonald's Corp.**, 118 A.3d 408, 412 (Pa. Super. 2015)]. In deciding a preliminary objection for lack of personal jurisdiction that, if sustained, would result in dismissal, the court must consider the evidence in the light most favorable to the nonmoving party. **Hall-Woolford Tank Co., Inc. v. R.F. Kilns, Inc.**, 698 A.2d 80 (Pa. Super. 1997). Where upholding the sustaining of preliminary objections results in dismissal of the action, we may do so only in cases that are clear and free from doubt. **Baker v. Cambridge Chase, Inc.**, 725 A.2d 757, 764 (Pa. Super. 1999).

*Sawyers v. Davis*, 222 A.3d 1, 5 (Pa. Super. 2019).

Additionally, "the moving party has the burden of supporting its preliminary objections to the trial court's jurisdiction." *Nutrition Mgmt. Servs. Co. v. Hinchcliff*, 926 A.2d 531, 535 (Pa. Super. 2007). "If an issue of fact is raised, the court shall take evidence by deposition or otherwise. The court . . . must resolve the dispute by receiving evidence thereon through interrogatories, depositions, or an evidentiary hearing."[1] *Id.*

Whether a trial court has personal jurisdiction over a defendant presents a question of statutory and constitutional law, as "the Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). There are two types of jurisdiction: general and specific. The current case involves the second type, specific jurisdiction.[2]

_____

[1] Here, the trial court received affidavits filed by Attorney Galgano, Dumond's owner, Norman Chanes, and president, Richard Grear, letters sent by Law Firm to Dumond preceding this litigation, and the deposition of Attorney Galgano. The parties do not dispute the facts or the authenticity of the materials submitted, and we also rely on them.

[2] General jurisdiction, codified at 42 Pa.C.S.A. § 5301, permits a court to "hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025) (citation omitted; emphasis in original). For business entities, general jurisdiction typically exists only in "its place of incorporation and principal place of business." *Ford Motor Co. v. Montana*, 592 U.S. 351, 358–59 (2021). While Dumond argues Galgano maintained consistent contact with this Commonwealth, it does not suggest that the contacts with this
*(Footnote Continued Next Page)*

Unlike general jurisdiction, specific jurisdiction requires a connection between the defendant's contacts with the forum and the suit; the United States Supreme Court broadly refers to specific jurisdiction as "case-linked" jurisdiction, ***Ford***, 592 U.S. at 358, and "[t]he plaintiff's claims . . . must arise out of or relate to the defendant's contacts with the forum." ***Id.*** at 359 (quotation marks and citation omitted).

Specific jurisdiction is authorized by 42 Pa.C.S.A. § 5322, and subsection (a) delineates ten separate bases for jurisdiction. Additionally, subsection (b) includes "a catchall provision which authorizes the exercise of personal jurisdiction over persons who do not come within one of the express provisions of the ten subsections of section (a) so long as the minimum

_____

Commonwealth were "so 'continuous and systematic' as to render them essentially at home in the forum State." ***Goodyear Dunlop Tires Operations, S.A. v. Brown***, 564 U.S. 915, 919 (2011).

The statute also authorizes general jurisdiction when a foreign corporation registers with our Department of State. ***See*** 42 Pa.C.S.A. § 5301(a)(2)(i) (stating "qualification as a foreign corporation" permits general jurisdiction); 15 Pa.C.S.A. § 411(a) (requiring registration with Department of State as condition of doing business in Commonwealth). ***See also Mallory v. Norfolk S. Ry. Co.***, 600 U.S. 122, 134 (2023) (affirming general jurisdiction may be based on this statutory framework). According to a search of the Department of State's directory, available at https://file.dos.pa.gov/search/business, the Law Firm did not register with this Commonwealth. ***See*** Pa.R.E. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Furthermore, Attorney Galgano's affidavit states that "neither [he] nor [Law Firm] had an office or principal place of business in . . . . Pennsylvania or Philadelphia County." Affidavit of Thomas M. Galgano, 12/20/23, at ¶ 7.

requisites of federal constitutional law are met." ***Scoggins v. Scoggins***, 555 A.2d 1314, 1318 (Pa. Super. 1989). Where, as here, "the plaintiff has alleged jurisdiction under both section 5322(a) and 5322(b), this Court has declined to conduct a separate analysis of section 5322(a), and has instead addressed only whether the requirements of Due Process were satisfied."[3] ***Mendel v. Williams***, 53 A.3d 810, 821 n.4 (Pa. Super. 2012).

Notwithstanding, Dumond's citation to section 5322(a) is helpful as it illustrates Dumond's theory of why Pennsylvania may hale Galgano to defend the suit. By all appearances, this case has little to do with Pennsylvania: a New York attorney, who is not licensed in Pennsylvania, gave legal advice from New York on behalf of his New York-based law firm to a company, incorporated in New York, concerning federal law. Dumond argues that Pennsylvania nonetheless may hear this suit under section 5322(a)(3), which permits "personal jurisdiction . . . as to a cause of action or other matter arising from such person . . . [c]ausing harm or tortious injury by an act or omission in this Commonwealth." 42 Pa.C.S.A. § 5322(a)(3). Dumond, therefore, connects the advice rendered by Attorney Galgano to the "harm suffered by [Dumond] due to relying on [Galgano's] faulty legal advice." Appellant's Brief, at 12 (citing 42 Pa.C.S.A. § 5322(a)(3)).

With this theory in mind, we address the pertinent constitutional limitations. To ensure States "do not reach out beyond the limits imposed on

_____

[3] Dumond argued both subsections in its response to the preliminary objections. ***See*** Memorandum of Law, 2/26/24, at 2.

- 5 -

them by their status as coequal sovereigns in a federal system," ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 292 (1980), due process requires "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." ***International Shoe Co. v. Washington***, 326 U.S. 310, 316 (1945) (quotation marks and citation omitted). "As a general rule, the sovereign's exercise of power requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws[.]" ***J. McIntyre Mach., Ltd. v. Nicastro***, 564 U.S. 873, 880 (2011) (quotation marks and citation omitted). The question is whether the defendant "purposefully derive[d] benefit from their interstate activities." ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 473 (1985) (citation and internal quotation marks omitted).

Our Supreme Court has adopted the following three-part test when conducting a personal jurisdiction analysis:

> (1) Did the plaintiff's cause of action arise out of or relate to the out-of-state defendant's forum-related contacts?
>
> (2) Did the defendant purposely direct its activities, particularly as they relate to the plaintiff's cause of action, toward the forum state or did the defendant purposely avail itself of the privilege of conducting activities therein?
>
> (3) [W]ould the exercise of personal jurisdiction over the nonresident defendant in the forum state satisfy the requirement that it be reasonable and fair?

***Hammons v. Ethicon, Inc.***, 240 A.3d 537, 556 (Pa. 2020) (footnote omitted).

Our analysis focuses on the first two parts, specifically, whether the cause of action arose out of or is related to Galgano's contacts with this Commonwealth, and whether Galgano and Law Firm purposely directed their case-linked contacts toward Pennsylvania This case is unusual in that the contacts typically have a direct relationship to the lawsuit, such as a products liability case where the plaintiff seeks to show an out-of-state manufacturer or distributor has sufficient connections to the chosen forum. Here, the "harm" is one step removed: Dumond claims that Galgano's defective legal advice caused W.M. Barr & Company to file the federal lawsuit later transferred to Pennsylvania.

The facts cited by Dumond as establishing a "purposeful availment" are Galgano: (1) establishing a website accessible by Pennsylvania citizens; (2) sending legal correspondence to Dumond at its Pennsylvania offices; and (3) being aware that Dumond manufactured its products in Pennsylvania.

Beginning with Galgano's website, Dumond highlights the fact that the site "advertises '[Attorney] Galgano had prosecuted thousands of patents, trademarks and copyrights on behalf of a broad base of regional, national[,] and international clientele.'" Appellant's Brief, at 13 (quoting website). We do not deem this contact relevant to our analysis. For jurisdictional purposes we apply "a 'sliding scale' analysis . . . based largely on the degree and type of interactivity' on the site." ***Moyer v. Teledyne Cont'l Motors, Inc.***, 979

A.2d 336, 349 (Pa. Super. 2009) (citation omitted) (en banc). If the site merely "make[s] . . . information available to those who are interested in it," it is a "passive" site and cannot justify specific jurisdiction. *Id.* at 350. Galgano's website is passive in nature.

We next address the content of the four letters sent by Galgano to Dumond in Pennsylvania that were attached to Dumond's memorandum of law responding to the preliminary objections. Three of the four letters have no connection to the "SAFE N' EASY CITRUS PAINT & VARNISH REMOVER GEL mark at issue in this case. The first letter is dated December 30, 2014, and addressed to Dumond's office in Malvern, PA. It states Galgano's opinion that Dumond would likely not obtain trademark protection for the marks "MOLD TEC" and "MOLD TECH." The second letter is dated August 17, 2017, and addresses an extension of time, for unspecified purposes, regarding the mark "DECK-LOGIC." This letter was sent to Dumond's office in West Chester, PA. A third letter, dated November 9, 2018 and also sent to the West Chester office, again concerns a trademark unrelated to the product at issue in this case. The fourth and final letter is an invoice sent to Dumond's office in Downingtown, PA, dated August 31, 2020, for Galgano's work on this case.

Notably, Dumond does not appear to argue that these letters constitute sufficient contacts in and of themselves. Instead, Dumond maintains that these contacts establish that Galgano "knew" Dumond could expect to be sued

in Pennsylvania.[4]  *See* Appellant's Brief, at 13 ("[Galgano's] letters containing legal advice and invoices were sent to [Dumond's] Pennsylvania offices in Malvern, West Chester, and Downingtown.  [Galgano] knew [Dumond] manufactured their products in Pennsylvania, which entered the stream of commerce in Pennsylvania.") (citation omitted).  Thus, Dumond argues, Galgano should have known that Dumond could be sued in Pennsylvania if Galgano's trademark advice was incorrect.  *See id.* at 14 ("The [federal lawsuit] was a foreseeable consequence of [Galgano's] faulty legal advice, as [Dumond] operated their business in Pennsylvania.").

We note at this juncture that the parties have not directed us to any case from this Commonwealth analyzing specific jurisdiction in a legal malpractice case like this one.  Galgano relies on two decisions from the Court of Common Pleas of Philadelphia County.  *See generally* Appellee's Brief, at 10-15.  Our research has likewise not uncovered any binding decision.[5]  However, our decision in *Mendel*, *supra*, is analogous and warrants discussion.

---

[4] Attorney Galgano was asked at his deposition, "Did you know if my client's products were manufactured in Pennsylvania?"  He replied, "I believe so." Deposition, 4/17/24, at 8.

[5] In *Nutrition Mgmt. Servs. Co. v. Hinchcliff*, 926 A.2d 531 (Pa. Super. 2007), we held that specific jurisdiction did not exist over New York attorneys. However, the attorneys in that case gave legal advice to a New York business working with a Pennsylvania company, whereas here Galgano's advice was given to a business that, while incorporated in New York, primarily operates out of Pennsylvania.

In **Mendel**, Eric Williams, M.D., a Pennsylvania doctor, operated on April Mendel at Albert Einstein Medical Center (Einstein), a Philadelphia hospital. Following surgery, Mendel returned to her home in New Jersey and sought treatment for pain at a local hospital, Underwood Memorial Hospital (Underwood), about one week after the surgery. Robert Ocasio, M.D., and other Underwood physicians informed Mendel that the surgical site was infected and contacted Dr. Williams, who agreed to admit Mendel to Einstein for treatment. However, because there was no bed available until the next day, Mendel had to stay at Underwood. Her condition worsened overnight and the New Jersey doctors "approved increasingly strong pain medication, but failed to diagnose and treat the epidural abscess that was compressing Mendel's spine." **Mendel**, 53 A.3d at 815. Mendel was transported to Philadelphia the next morning. The New Jersey physicians, however, described her condition as stable and did not warn Dr. Williams of her worsening condition. Doctor Williams then operated on Mendel to address the infection and discovered the abscess. Mendel sued various defendants, including the New Jersey doctors. Those defendants raised a preliminary objection to this Commonwealth's jurisdiction, which the trial court granted.

On appeal, our Court affirmed, concluding that exercising specific jurisdiction would violate due process. We noted that "[c]ourts have generally been reluctant to extend specific personal jurisdiction to out-of-state medical providers for causing injury to Pennsylvania patients, even though the effects of the doctors' negligence may be felt in Pennsylvania." **Id.** at 824. This

- 10 -

tendency is based on a public policy that doctors should be encouraged to give full medical treatment without fear that "the patient may carry the consequences of his treatment" to "distant lands" and be sued there. *Id.* at 825 (quoting *Wright v. Yackley*, 459 F.2d 287, 290 (9th Cir. 1972)). The policy "assumes that medical practices tend to be localized within a single state." *Id.* (quotation marks omitted). Thus, where the medical practice "involves interstate activity, either through marketing or purposeful and continued treatment of foreign patients, courts are more likely to uphold specific jurisdiction over the out-of-state physician." *Id.* at 825. We concluded that Dr. Ocasio and the Underwood physicians could not be sued in Pennsylvania because the treatment was localized to New Jersey. In coming to its decision, the Court stated:

> The facts of the instant case do not present any of the special characteristics of a doctor-patient relationship that would justify extending jurisdiction in Pennsylvania to Underwood or Doctor Ocasio. . . . Underwood and Doctor Ocasio did not promote their practice through national marketing, did not solicit Mendel as a patient and did not purposefully treat patients in Pennsylvania. Additionally, . . . Underwood and Doctor Ocasio did not maintain any contact with Mendel after she had returned to Pennsylvania such that they could be said to have committed a negligent act here or purposefully directed their activities here. To the contrary, Mendel's complaint centers on Underwood and Doctor Ocasio's *failure* to act after she returned to Pennsylvania.
>
> Nor does the fact that Mendel's injury continued in Pennsylvania or was discovered in Pennsylvania allow for an inference that Underwood or Doctor Ocasio caused harm here. As we have established above, to the extent that Mendel was caused harm by Underwood and Doctor Ocasio, the harm occurred in New Jersey where the negligence originated, not in Pennsylvania where the negligence was discovered.

- 11 -

*Id.* at 827 (emphasis in original).

Obviously, the attorney-client relationship differs from the patient-doctor relationship explored in ***Mendel***. Still, we agree with the essential point that a jurisdictional analysis should not fixate on where the "effect" of the malpractice manifests. Just as the effects of improper medical treatment can be felt anywhere the patient travels, so too can improper legal advice be "felt" anywhere the client happens to be sued. Indeed, under Dumond's logic the harm also occurred in North Carolina, where Barr initially filed suit.

We, therefore, discount the argument that where Dumond happened to be sued is itself a relevant factor. Presumably, Dumond agrees that Galgano could not be sued in North Carolina. But the only appreciable difference between North Carolina and Pennsylvania with respect to Galgano's contacts is the letters and website. We have determined that the website is passive in nature and not relevant, and the letters fare little better. In fact, three of the four letters have nothing to do with the trademark at issue.[6] The remaining letter is simply an invoice for the legal services Galgano provided in New York.

_____

[6] We add that the record establishes that Dumond and Galgano had a history of working together. The affidavit of Galgano stated that "[he] and [his] law firm originally began doing business with [Dumond] when they were located and doing business in New York, in or around 2004." Affidavit of Thomas M. Galgano, 12/20/23, at ¶ 12. Dumond's memorandum of law in response to preliminary objections stated that its "corporate offices have been in Pennsylvania since as early as 2014 to the present." Memorandum of Law, 2/26/24, at 3.

To the extent that Dumond argues the foreseeability of a lawsuit in Pennsylvania supports its jurisdictional arguments, we disagree. The United States Supreme Court has addressed this issue:

> [T]he constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. [**International Shoe**, 326 U.S. at 316]. Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. **World-Wide Volkswagen Corp. v. Woodson**, 444 U.S., at 295[.] Instead, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." **Id.**, at 297[.]

**Burger King**, 471 U.S. at 474 (footnote omitted).

This passage illustrates the flaws in Dumond's argument that jurisdiction exists because the federal lawsuit "was a foreseeable consequence[.]" Appellant's Brief, at 14. Even if it were foreseeable that Dumond would be "injured" in Pennsylvania by a lawsuit, it does not follow that Galgano could reasonably anticipate being haled into court in this Commonwealth based on its work in this case. This is not a case where Galgano traveled to Pennsylvania to do work for Dumond or otherwise represented it in this Commonwealth.

We, therefore, conclude that, regardless of where the injury manifested itself in the form of a lawsuit, the underlying "harm" was caused in New York,

- 13 -

where Attorney Galgano gave the advice. The contacts between Galgano and Pennsylvania are of insufficient quality to confer jurisdiction.[7]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/19/2025

_____

[7] The remaining two issues are rendered moot by our jurisdictional conclusion. Briefly, in an abundance of caution, Galgano raised two additional claims in its preliminary objections: (1) that venue in Philadelphia would be improper and (2) that Dumond's breach of contract claim was in truth a negligence claim.

The trial court concluded that venue was improper in Philadelphia due to the lack of jurisdiction and relatedly determined that there was no appropriate county within this Commonwealth. However, as the trial court lacked jurisdiction, it had no authority to consider venue. *See Mendel v. Williams*, 53 A.3d 810, 828 (Pa. Super. 2012). ("Because Pennsylvania lacks jurisdiction over Underwood and Doctor Ocasio, the issue of venue in Pennsylvania does not apply.").

Additionally, Galgano argued that Dumond erroneously characterized its claim for relief as a breach of contract claim relative to the attorney-client relationship. Galgano maintained that under the "gist of the action" doctrine, Dumond was pursuing a negligence claim. The trial court declined to address this issue, and we follow its lead. How the claims should be characterized is relevant only if this Commonwealth has specific jurisdiction. Because it does not, there is no need to address this issue. Accordingly, the second and third issues cannot merit relief.